ELCO INDUSTRIES, INC., Plaintiff-Appellee, *v.* LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellant.

First District (3rd Division)   No. 62127

Opinion filed January 19, 1977.—Rehearing denied April 7, 1977.

Schaffenegger & Watson, Ltd., of Chicago (Jack L. Watson, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas R. Nelson, Robert L. Berner, Jr., and Donald Brown, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

The plaintiff, Elco Industries, Inc. brought this declaratory judgment action against defendant, Liberty Mutual Insurance Company, to seek a declaration defining the scope of coverage of an insurance policy issued to Elco by Liberty Mutual. Elco seeks a determination that its policy requires Liberty Mutual to defend and indemnify Elco in a suit initiated

by the Kohler Company against Elco for damages. Kohler's suit resulted from Elco's alleged failure to properly heat treat and case harden governor regulating pins manufactured by Elco for Kohler. Kohler's action is pending in Wisconsin.

Elco and Liberty Mutual filed a stipulation of facts with the trial court in the present case and each moved for summary judgment. The trial court granted Elco's motion for summary judgment, and Liberty Mutual appeals.

The stipulated facts before the trial court were as follows. Elco entered into a contract with Kohler, a manufacturer of internal combustion engines, whereby Elco agreed to manufacture and supply Kohler with 30,000 "governor regulating pins." The agreement between Elco and Kohler required Elco to utilize a certain manufacturing process to heat treat and case harden the pins. Subsequent to the installation of 10,000 pins in various Kohler engines, Kohler discovered that the pins had not been case hardened as specified in the contract with Elco. Kohler recalled those engines containing defective pins and replaced the pins.

Kohler filed suit against Elco seeking damages in the amount of $282,853.88. In its amended complaint Kohler alleged that Elco's failure to case harden the pins created an "unreasonably dangerous defect in the unhardened product." Kohler claimed that such a defect necessitated it to "develop testing and replacement techniques, identify, locate, reinspect, rip out, replace or repair" the pins which it had installed in those Kohler engines and electric plants already assembled for shipment and those which had been shipped or were in the hands of original equipment manufacturers.

Liberty Mutual had issued a general liability policy to Elco covering the period during which the Kohler contract was executed. The policy contained the following provisions pertinent to this appeal:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. bodily injury or

Coverage B. property damage

to which this policy applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage. * * *"

The policy also contained the following exclusion:

"Exclusion: This policy does not apply: (n) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which some products or work form a part, if such products, work or property are withdrawn

from the market or from use because of any known or suspected defect or deficiency therein."

The policy defined "property damage" as injury to or destruction of tangible property. It defined "occurrence" as accident, event or happening, including injurious exposure to conditions which result during the policy period in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

On appeal Liberty Mutual contends that its policy does not provide coverage for the damages sought in the Kohler suit against Elco because Kohler did not seek recovery for bodily injury or property damage caused by an occurrence as defined in the policy, and because the type of damages sought in the Kohler suit were specifically excluded by the policy in exclusion (n).

Liberty Mutual relies heavily upon the case of *Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.* (7th Cir. 1975), 508 F.2d 417, to support its position that the policy in question does not extend coverage to the Kohler claim against Elco. In *Hamilton*, a manufacturer withdrew completed tennis rackets from the market because the insured had failed to comply with contract specifications concerning the porosity of the racket frames. The court held that the mere inclusion of the defective component (the racket frames) without any resulting harm to the other parts of the racket was insufficient to constitute property damage as defined in the contract and the insured maker of the frames was denied coverage under its general liability insurance policy.

Courts, however, have allowed recovery in situations where the installation of a defective component or ingredient results in damage to the finished product. In such a case the damage is deemed to have resulted from an occurrence as defined in the general liability policies issued by the insurers. *Thomas J. Lipton, Inc. v. Liberty Mutual Insurance Co.* (1974), 34 N.Y. 2d 356, 357 N.Y.S. 2d 705, 314 N.E.2d 37; *Gulf Insurance Co. v. Parker Products, Inc.* (Tex. 1973), 498 S.W.2d 676; *Arcos Corp. v. American Mutual Liability Insurance Co.* (E.D.Pa. 1972), 350 F. Supp. 380.

■■ In the present case, the matter was presented to the trial court by stipulated facts, and both sides have agreed that the issue to be decided is a legal one. It is our view, however, that the allowance of summary judgment by the trial court was premature because the facts before the court did not entitle either party to judgment as a matter of law. The stipulated facts do not indicate the precise effect of the installation of the defective pins upon the Kohler engines and electric plants. In its amended complaint against Elco, Kohler alleged that the failure to case harden the pins created an unreasonably dangerous defect in the unhardened product which necessitated their recall and removal from Kohler devices. It is unclear on the basis of the record before us whether the installation of

the governor regulating pins was such that the pins became so intertwined with the entire mechanism that the defect and their subsequent removal necessarily resulted in damage to the completed product. If such was the case, the situation is analogous to the facts before the court in the *Arcos* case. In that case, insurance coverage for replacement of faulty welding wire was allowed since the defective wiring had to be ripped out and the securing joints of the atomic reactors rewelded. The recall and removal of the defective product resulted in damage to the reactors in which they were installed thereby bringing the insured's claim within the ambit of coverage allowed in its policy and rendering the exclusionary clause inapplicable.

It has not been shown in the present case that removal of the pins required expenditures greater than that necessary to replace the pins themselves and that the defective pins resulted in damage to the other parts of the engine. We believe a resolution of those facts to be crucial in determining the applicability of the exclusionary clause in the present case. In the previously mentioned *Lipton* case, the court held exclusion (n) inapplicable to the claim of the insured manufacturer of macaroni and egg noodles whose contaminated products ruined the soups in which they were ingredients. Similarly, in *Parker Products* the insured manufacturer of flavoring mixes brought suit against the insurer who refused to defend it in a suit by an ice cream manufacturer for the cost of labor and ingredients in manufacturing ice cream rendered unfit for consumption by use of the insured's flavorings which contained paper. In each case the court held exclusion (n) inapplicable to those situations where the damages to the finished product were the result of the incorporation of insured's defective component into the buyer's product and it was the buyer who recalled the merchandise from the market.

■■ That the trial court granted summary judgment in favor of Elco prematurely, does not necessarily mean that summary judgment in favor of Liberty Mutual is appropriate at this stage of the proceedings. All exclusions, conditions, or provisions which tend to limit or defeat liability should be construed most favorably to the insured. (*Pierce v. Standard Accident Insurance Co.* (1966), 70 Ill. App. 2d 224, 216 N.E.2d 818.) Elco must be given an opportunity to show that its claim falls within the scope of coverage afforded in the policy issued by Liberty Mutual.

For the reasons stated, the judgment of the circuit court of Cook County granting summary judgment to Elco is reversed, and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Reversed and remanded.

SIMON, P. J., and JIGANTI, J., concur.