LUDWIG CANDY COMPANY, Plaintiff-Appellee, *v.* IOWA NATIONAL MUTUAL INSURANCE COMPANY *et al.*, Defendants-Appellants.

First District (1st Division)    No. 78-1576

Opinion filed November 13, 1979.

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago (James T. Ferrini, Joseph J. McDonough, and Margaret J. Orbon, of counsel), for appellant Iowa National Mutual Insurance Company.

Epton, Mullin, Miller & Druth, Ltd., of Chicago (Alan R. Miller and Roger A. Bixby, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Ludwig Candy Company (Ludwig) brought suit against Iowa National Mutual Insurance Company (Iowa National) seeking a declaratory judgment to require Iowa National to indemnify and defend Ludwig pursuant to a policy of insurance issued by Iowa National. Motions for judgment on the pleadings were filed by both parties. The trial court initially granted Iowa National's motion for judgment on the pleadings. On rehearing, the court vacated its prior order and granted Ludwig's cross-motion for judgment on the pleadings. Iowa National appeals.

Iowa National's position is that it owes no duty to indemnify or defend Ludwig in an action brought against Ludwig by Seaway Candy Company (Seaway). Iowa National contends that Seaway's complaint fails to allege "property damage" or "an occurrence," each of which is a prerequisite to its duty to indemnify and defend under the policy. Iowa National further contends that certain policy exclusions also relieve it from this duty. Ludwig contends that Seaway's complaint did sufficiently assert "property damage" and "an occurrence," as those terms are defined in the policy, and there are no exclusions that relieve Iowa National of its duty to indemnify and defend Ludwig. Ludwig also contends Iowa National waived its defense of no "occurrence" and its defense of the applicability of one of the exclusions of the policy.

Under the view we take of this case, the issue of whether "property damage" is asserted in the Seaway complaint is dispositive. We need not consider the other contentions of the parties.

On June 19, 1975, Ludwig was served with a complaint and summons in an action in the circuit court of Kankakee County brought by Seaway. The complaint alleged Ludwig is an Illinois corporation which manufactures and packages various types of candy products. One of Ludwig's customers is Seaway, which markets candy products throughout the United States. In the latter months of 1974 and through the early months of 1975, Seaway received many complaints from consumers of their candies. The consumers complained the candy was "of an inferior and unacceptable quality, in that the candy was impregnated with a plastic taste." A high-impact plastic tray that Ludwig used to package its products "impregnated" the candy with this plastic taste. Seaway thereafter ceased marketing the candy products purchased from Ludwig.

The complaint alleged that Ludwig breached its implied warranties and representations to Seaway that the candy products were adequately

contained and packaged, fit for human consumption, of a general merchantable quality, and fit for Seaway's particular purpose of resale to its customers. In addition, Seaway charged that Ludwig was negligent in using the high-impact plastic tray which impregnated the candy products with a plastic taste.

Finally, Seaway alleged that, as a result of Ludwig's carelessness, negligence and breach of implied warranties and representations, Seaway suffered a loss of profits, damage to its business reputation, and loss of good will. Seaway was also forced to incur warehousing and other incidental expenses.

The general insuring clause of the Iowa National policy issued to Ludwig provides:

"I. COVERAGE C—BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements."

The policy also defines "property damage" as "injury to or destruction of tangible property."

■■ In *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193, 355 N.E.2d 24, the court held:

"In determining whether the insurer owes a duty to the insured to defend an action brought against him, it is the general rule that the allegations of the complaint determine the duty. If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy the duty to defend has been established."

Therefore, our inquiry in this case is whether the Seaway complaint alleges facts within or potentially within the coverage of the above quoted insuring clause. There are three recent authorities that we must examine to resolve this question.

■ In *Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.* (7th Cir. 1975), 508 F.2d 417, 419, the court construed an insurance policy which, as does the policy in this case, defined property damage as "injury to or destruction of tangible property." In *Hamilton*, plaintiff furnished defective aluminum tennis racket frames which the buyer used to make tennis rackets. The buyer sued plaintiff which in turn sued its insurance carrier. The insurance company argued no property damage had occurred. Plaintiff contended there was property damage to the finished rackets because the defective part had been incorporated into them. The court found plaintiff's contention "far-fetched" and stated (*Hamilton*, 508 F.2d 417, 419):

> "We do not think that the mere inclusion of a defective component, where no physical harm to the other parts results therefrom, constitutes 'property damage' within the meaning of the policy."

This rule was reiterated by the same court in *Dreis & Krump Manufacturing Co. v. Phoenix Insurance Co.* (7th Cir. 1977), 548 F.2d 681. Dreis & Krump built a press brake that was sold to Bustin Steel Products. Bustin sued Dreis & Krump and alleged the press brake was defective. Dreis & Krump's insurance carrier refused to defend on the grounds that there was no coverage. Dreis & Krump argued that the reduction in the market value of the special structure built by Bustin to house the defective press brake constituted property damage under the policy. The court rejected this contention and adhered to its holding in *Hamilton*. The court held "some actual injury to 'tangible' property must be alleged before consequential damages such as loss of use may be recovered." *Dreis & Krump*, 548 F.2d 681, 687.

Our final authority is *Pittway Corp. v. American Motorists Insurance Co.* (1977), 56 Ill. App. 3d 338, 370 N.E.2d 1271. In *Pittway*, a manufacturer of aerosol valves was exposed to liability when its defective valves were incorporated into aerosol cans of hair spray. The defects rendered the hair spray and the cans useless. The court required the insurer to grant coverage to the manufacturer. The court cited numerous authorities to the proposition that "the term 'property damage' includes tangible property which has been diminished in value or made useless irrespective of any actual physical injury to the tangible property." (*Pittway*, 56 Ill. App. 3d 338, 342.) The court then ruled that there was damage to the hair spray cans and their contents which constituted damage to tangible property "and not mere economic damage in the nature of loss of investment, anticipated profits and financial interests." *Pittway*, 56 Ill. App. 3d 338, 342.

The court distinguished both *Hamilton* and *Dreis & Krump* on grounds that the complaints against the insureds did not in either of those cases allege injury to or diminution in value of any tangible property. The

court stated that *Pittway* differed from *Hamilton* because plaintiff in *Pittway* was not seeking coverage for his defective product on the theory that it had been integrated into the finished product as in *Hamilton,* but rather, sought "only an amount which represents the resultant damage to the cans and the contents of third parties caused by his defective valve." (*Pittway,* 56 Ill. App. 3d 338, 343.) The *Pittway* court differentiated *Dreis & Krump* from *Pittway* because "the complaint of the purchaser [in *Dreis & Krump*] did not allege damage to tangible property and therefore was not within the property damage coverage." (*Pittway,* 56 Ill. App. 3d 338, 343.) In *Dreis & Krump,* the purchasers only sought recovery for loss of use of the special structure built to house the defective press brake.

■■ After reviewing these authorities, it is our opinion that Seaway's complaint against Ludwig does not allege property damage. The complaint seeks recovery from Ludwig solely for economic losses sustained by Seaway such as loss of profits, damage to business reputation, loss of good will, costs incurred in warehousing and other incidental expenses. In our opinion, *Hamilton* controls this situation. In *Hamilton* (508 F.2d 417, 419-20), the court gave the following example:

> "[I]f an automobile crash results from the failure of its defective tire, the defective component can be said to have caused 'property damage' to the finished product. If, however, some of the tires purchased by the automobile manufacturer are found to be defective and the manufacturer therefore withdraws its cars from the market, there has not been 'injury to or destruction of tangible property,' which is (as noted) the definition of 'property damage' in the policy."

In the instant case, the defective candy product was withdrawn from the market before any "injury to or destruction of tangible property" resulted.

In our opinion, *Pittway* is distinguishable from the instant case. In *Pittway,* damage to tangible property was the gist of the action against the insured. The complaint alleged that the buyer of the defective valves was forced to scrap the completed hair spray products that were damaged because of the incorporation of the defective valves into the aerosol spray cans. In the instant case, the candy products were manufactured and packaged at Ludwig's plant. The completed product was defective when sold to Seaway and Seaway ceased to market it. Seaway did not claim damage to any of its tangible property. Seaway's complaint was necessarily limited to damages in the nature of pure economic losses. These losses were all intangible and cannot satisfy the "property damage" definition and requirements of the policy. See *Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 124, 294 N.E.2d 7, *appeal denied* (1973), 53 Ill. 2d 608.

Ludwig contends that the complaint against the insured need not claim property damage before coverage under the policy is applicable. Ludwig points out that the general insuring clause obligates Iowa National to pay "all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage * * *." Ludwig argues that "the 'all sums' language encompasses more than 'property damage'."

We disagree. The plain meaning of this policy language indicates that only if the insured is liable for bodily injury or property damage must the insurance company pay "all sums" insured is obligated to pay. Property damage must necessarily be alleged in the complaint against the insured as a condition precedent to coverage.

Ludwig has devoted a good portion of its brief to a discussion of the various exclusions contained in the policy. We do not find the discussion of exclusions to be germane. On the contrary, in our opinion, the issue of coverage must necessarily be determined not by the various exclusions but by the policy definition of the coverage as applied to the factual elements of the case before us. We are in accord with the statement that "[e]xclusions in an insurance policy have relevance only when there is coverage." *Hartford Accident & Indemnity Co.*, 10 Ill. App. 3d 115, 124.

It seems to us that this argument by Ludwig is no more than an attempt to construe the policy language defining coverage by reference to the various exclusions. We find the language of the policy defining coverage to be clear and unambiguous. Therefore, we are obliged to give this language its plain and ordinary meaning so that there is no need for construction or interpretation. The cases supporting this result are cited in *Johnson v. State Farm Mutual Automobile Insurance Co.* (1979), 78 Ill. App. 3d 144, 145, 396 N.E.2d 1190.

We conclude that Iowa National is under no duty to defend Ludwig in the Seaway action. Accordingly, the judgment of the trial court is reversed.

Judgment reversed.

O'CONNOR and CAMPBELL, JJ., concur.