CMO GRAPHICS, INC., Plaintiff-Appellant, *v.* CNA INSURANCE, a/k/a Continental Casualty Company, Defendant-Appellee.

First District (1st Division) No. 82—222

Opinion filed May 31, 1983.—Rehearing denied July 11, 1983.

Alex Devience, Jr., and John F. O'Meara, both of Chicago, for appellant.

Willis R. Tribler and Douglas C. Crone, both of Haskell & Perrin, of Chicago, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, CMO Graphics, Inc., appeals from the dismissal of its complaint alleging breach of a policy of insurance by defendant CNA Insurance Company. On appeal, plaintiff contends: (1) that the loss suffered by its client Chase/Ehrenberg & Associates as a result of a defective product produced by plaintiff is covered by the "tangible property damage" provision of the comprehensive general policy issued by defendant; (2) that the pleadings filed by Chase/Ehrenberg against CMO adequately establish that its claim against CMO is covered in part by the policy; and (3) that the "tangible property damage" suffered by Chase/Ehrenberg is not subject to the various exclusions in the policy.

The parties are in agreement as to the basic facts. The pleadings establish that CMO Graphics, Inc. (hereinafter CMO), is in the business of producing artwork for use in printed advertisements. In May 1975, CMO agreed to produce for Chase/Ehrenberg & Associates graphics for use in toy advertising supplements to be inserted into newspapers during the 1975 Christmas season. CMO agreed to supply "camera ready art work" including designing the format, providing photographs and pencil drawings of the products and typesetting all pages of copy from manuscripts provided by Chase/Ehrenberg. Plaintiff did not finish producing the graphics until October 1975.

In December 1975, Chase/Ehrenberg notified plaintiff that the graphics provided were defective. Subsequently, in its third amended complaint against CMO, Chase/Ehrenberg sought damages of $200,000. The Chase/Ehrenberg complaint sought two types of damages. First, Chase/Ehrenberg sought to recover damages caused by the fact that CMO delivered the artwork two months late. Second, Chase/Ehrenberg sought to recover damages suffered as a result of CMO's defective product as follows: the artwork for the advertising inserts, when ready, did not conform with the copy draft layout which Chase/Ehrenberg had, on or about July 15, 1975, supplied to CMO.

Said nonconformities included, but were not limited to the following: improper price information; omission of various items that were to be included; and improper photography. Chase/Ehrenberg further alleged that as a result of CMO's breach of contract it paid money to printers for the printing of inserts that were unusable because of CMO's errors in preparing the artwork.

In its original complaint Chase/Ehrenberg had also alleged that as a result of CMO's delayed and defective production: Chase/Ehrenberg had to pay $15,000 to appease each of two sellers whose products had been omitted from the insert or mispriced; Chase/Ehrenberg had to deliver inserts, which cost $31,751 to print, to a seller at no charge; Chase/Ehrenberg had to spend $46,000 to obtain additional advertising inserts to correct erroneous prices in the insert produced by CMO; and Chase/Ehrenberg suffered lost profits of $5,000.

In April 1980, the Chase/Ehrenberg suit against CMO was settled for $20,000. CMO alleges to have spent $9,000 in legal fees and expenses for its defense against Chase/Ehrenberg's claim.

For the period of January 1, 1975, through January 1, 1976, plaintiff had a "Commercial Casualty Policy" with defendant CNA Insurance Company (hereinafter CNA). Included in the policy was a "comprehensive general liability" section, which provided in pertinent part:

> "The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of ***
>
> B. *property damage*
>
> To which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking damages on account of such *** *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent ***." (emphasis in the original)

The policy defined property damage as:

> "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss thereof ***, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period."

CMO referred the claim to CNA but CNA declined to accept the claim. In a letter dated March 18, 1976, CNA informed plaintiff that CNA did not consider the loss suffered by Chase/Ehrenberg to be a loss to tangible property. Further, CNA asserted that if the loss was considered to be property damage, such loss was not covered by the

policy because of an exclusion to general comprehensive liability insurance. This exclusion provided:

"(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or (2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured."

After the third amended complaint was filed by Chase/Ehrenberg, plaintiff again made a demand upon CNA to assume the defense and accept part of the claim. CNA informed plaintiff that in addition to the earlier stated reasons, CNA did not consider that its policy of insurance provided contractual coverage.

Plaintiff filed this action against CNA in January 1981. Plaintiff seeks to recover under the policy for the loss in market value of the completed product produced by Chase/Ehrenberg as a result of incorporating into the inserts the defective artwork supplied by plaintiff. Plaintiff does not claim a right to recover that portion of Chase/Ehrenberg's damages which reflect the cost of repairing the defective artwork and the additional expenses caused by delay. The trial court granted CNA's motion to dismiss and held that CNA had no duty to defend or indemnify CMO in the lawsuit pleaded by Chase/Ehrenberg.

On appeal, plaintiff argues that the loss in market value of the printed advertising supplements into which plaintiff's design layouts had been incorporated, constituted "destruction of tangible property" to the extent that it exceeded the cost of plaintiff's product and the repairs thereto. Plaintiff argues that courts have allowed an insured to recover under a comprehensive general liability policy covering tangible property damage in situations where the installation of a defective component or ingredient produced by the insured has resulted in damage to the finished product of a third party. Plaintiff contends that the defective artwork it produced caused tangible property damage to the printed advertising supplements produced by Chase/Ehrenberg and, therefore, a portion of Chase/Ehrenberg's claim is covered by defendant's policy. Plaintiff also argues that Chase/Ehrenberg's complaint adequately establishes that defendant's policy covers part of the claim and that the claim is not subject to any of the exclusions contained in the policy.

Plaintiff relies upon several cases which have allowed recovery for damage caused by the incorporation of an insured's defective product

into the product of a third party. In *Elco Industries, Inc. v. Liberty Mutual Insurance Co.* (1977), 46 Ill. App. 3d 936, 361 N.E.2d 589, the insured failed to heat treat governor regulator pins that it manufactured for a third party. The third party installed the defective pins in engines that it produced necessitating later recall of the engines and replacement of the pins. The court remanded the case because the facts were insufficient to show whether the installation of the defective pins was such that the pins became so intertwined with the entire mechanism that the defective pins and their subsequent removal resulted in damage to the completed product. On remand, it was determined that the repair of the defective pins necessarily resulted in damage to several components of the finished product, therefore, property damage occurred within the terms of the policy. (*Elco Industries, Inc. v. Liberty Mutual Insurance Co.* (1980), 90 Ill. App. 3d 1106, 414 N.E.2d 41.) The insured was allowed to recover the costs of the components that were destroyed and replaced in the process of removing the pins and the costs of the disassembly and the reassembly of the parts of the engines other than the insured's pins. No recovery was allowed for the value of the defective pins, the cost of the new pins and the cost of replacing the pins themselves. *Elco Industries, Inc. v. Liberty Mutual Insurance Co.* (1980), 90 Ill. App. 3d 1106, 1112-13, 414 N.E.2d 41, 46-47.

In *Pittway Corp. v. American Motorists Insurance Co.* (1977), 56 Ill. App. 3d 338, 370 N.E.2d 1271, the insured produced defective valve assemblies that were incorporated into aerosol cans filled with hair spray. The defective valve rendered the cans useless and the cans and their contents had to be scrapped. The court determined that "the term 'property damage' includes tangible property which has been diminished in value or made useless irrespective of any actual physical injury to tangible property." (56 Ill. App. 3d 338, 342, 370 N.E.2d 1271, 1274.) The *Pittway* court found that there was property damage in that case "in the sense of the diminution in value of the product manufactured and owned by a third party." (56 Ill. App. 3d 338, 343, 370 N.E.2d 1271, 1275.) The court, however, denied coverage to the insured on other grounds.

CNA urges that the trial court was correct in holding that Chase/Ehrenberg's third amended complaint was a claim for contractual economic loss and, therefore, is not covered under the policy. CNA asserts that the complaint contains no allegations of damage to any tangible property owned by Chase/Ehrenberg. Defendant also argues that even if Chase/Ehrenberg's complaint is held to state a claim for property damage, that claim is subject to exclusion (m) of the policy.

The insurer's duty to defend and indemnify is determined by the allegations contained in the complaint against the insured. "If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy the duty to defend has been established." (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193, 355 N.E.2d 24, 28.) Since plaintiff seeks indemnification for the settlement offer it made with Chase/Ehrenberg and for the expenses of its defense, we must look to the allegations in the third amended complaint.

In *Ludwig Candy Co. v. Iowa National Mutual Insurance Co.* (1979), 78 Ill. App. 3d 306, 396 N.E.2d 1329, the court denied coverage to an insured where the complaint filed against the insured did not claim damage to any tangible property. Rather, the court found that the complaint was limited to damages in the nature of pure economic losses. In *Ludwig*, a manufacturer had produced and packaged defective candy products for a customer who marketed the candy nationwide. The court determined that since the product was defective when sold to the customer, and the customer ceased to market it, the customer did not claim damage to any tangible property.

In *Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 294 N.E.2d 7, the insurer sought a declaratory judgment that it was not obligated to defend a suit filed against its insured, an architect and two construction companies, by the land developer who built the John Hancock Center in Chicago. The developer sought to recover for the negligent construction of caissons at the foundation of the building which resulted in delay and additional expense while the caissons were either repaired or replaced. The developer's complaint alleged breach of contract and negligence which resulted in loss of his investments and anticipated profits. The court found that the insurer was not obligated to defend since the developer did not allege injury to or destruction of property, nor that as a result of what the insured parties did or did not do he suffered damages and were the consequences of injury to or destruction of other property he owned. 10 Ill. App. 3d 115, 123, 294 N.E.2d 7, 13. See also *Sentry Insurance Co. v. S & L Home Heating Co.* (1980), 91 Ill. App. 3d 687, 414 N.E.2d 1218; *Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.* (7th Cir. 1975), 508 F.2d 417.

In the case at bar, the complaint is also limited to damages in the nature of economic losses. Chase/Ehrenberg sought to recover financial investments in the printing of the defective advertising inserts as well as lost profits and lost goodwill. Although plaintiff claims that its defective graphics caused tangible property damage to Chase/Ehren-

berg's supplements, Chase/Ehrenberg did not attempt in the third amended complaint to recover for any damage caused to its products or for the diminution in market value of its products. An examination of the complaint, in light of the legal precedent in this area, indicates that the trial court was correct in determining that the settlement paid by plaintiff was not covered by the tangible property damage clause of the comprehensive general policy issued by defendant.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and GOLDBERG, J., concur.