**TRAVELERS INSURANCE COMPANIES, Plaintiff–Appellee,**

v.

**PENDA CORPORATION, Defendant–Appellant.**

No. 91–1333.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 12, 1991.

Decided Sept. 3, 1992.

Rehearing and Rehearing En Banc Denied Sept. 29, 1992.

---

Thomas H. Fegan (argued), Robert M. Burke, Johnson & Bell, Chicago, Ill., for plaintiff-appellee.

William F. Conlon, Eugene A. Schoon (argued), John M. Breen, Sidley & Austin, Chicago, Ill., for defendant-appellant.

Before POSNER, RIPPLE, and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Travelers Insurance Companies (Travelers) brought a declaratory judgment action against its insured, Penda Corporation (Penda), to determine its responsibilities under a liability insurance policy. After cross-motions for summary judgment, a magistrate judge recommended that Travelers be found to have no duty to defend Penda in a suit for breach of contract and breach of warranty brought by Penda's customer, U.S. Sample Company (U.S. Sample). Penda objected to the magistrate judge's recommendation. Nevertheless, the district court held that Travelers had a duty neither to defend Penda nor to indemnify it in the U.S. Sample suit. Penda appeals and, for the following reasons, we reverse in part and vacate in part the judgment of the district court. This case is remanded to the district court for proceedings consistent with this opinion.

I

## BACKGROUND

### A. *Facts*

Penda is a Wisconsin company engaged in the business of commercial plastics extrusion. In December 1985, it received an order from its customer U.S. Sample for a number of white, lithograde styrene sheets. U.S. Sample intended to finish these sheets and then use them as display pages in sample books it had contracted to provide to its customer, Joanna Western Mills (Joanna Western). Pursuant to its agreement with U.S. Sample, Penda delivered the sheets to Bruce Offset Company, which U.S. Sample had hired to lithograph and varnish them. Bruce Offset then delivered the sample books to U.S. Sample, which, in turn, affixed color and material swatches to the pages. In March 1986, U.S. Sample began making partial shipments of the completed books to Joanna Western.

In October 1986, Joanna Western informed U.S. Sample that the pages of the sample books had yellowed. As a result, Joanna Western refused to pay for the

books unless U.S. Sample agreed to replace the defective sample books and to provide other concessions. Later, U.S. Sample filed suit against Penda and Bruce Offset Company in Illinois state court, claiming that the sheets were "unusable and unacceptable, and were rejected by the intended user, [Joanna Western]," R. 1, Ex. B, Complaint at ¶ 18, and alleging breach of contract and breach of warranty. As relief, U.S. Sample sought, along with costs and attorneys' fees, (1) $200,000 for loss of foreseeable profit from U.S. Sample's contract with Joanna Western; (2) $1,000,000 for loss of foreseeable profit on identified future business with Joanna Western; and (3) $1,000,000 for damage to its reputation. R. 1, Ex. B, Complaint at ¶ 21.

Penda requested defense of this claim from Travelers, which had previously issued it a comprehensive general liability policy. In its pertinent parts, this policy stated that Travelers

> will pay on behalf of [Penda] all sums which [Penda] shall become legally obligated to pay as damages because of ... bodily injury or ... property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against [Penda] seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent. . . .

R. 1, Ex. A (App. at A–47). The policy defined "property damage" as

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

R. 1, Ex. A (App. at A–43(a)). Travelers undertook the defense of the suit under a reservation of rights. It took the position that U.S. Sample's complaint alleged no property damage that would trigger insurance coverage. It later filed a declaratory

judgment action in Illinois state court to adjudicate the rights and liabilities of the parties under the policy. Diversity of citizenship exists in the declaratory judgment action, and Penda removed it to the United States District Court for the Northern District of Illinois.

## B. *District Court Proceedings*

After removal, the declaratory judgment action was assigned to a magistrate judge. Both parties filed cross-motions for summary judgment on the question whether Travelers had a duty to defend Penda in the U.S. Sample lawsuit, and Travelers also sought summary judgment on the question of whether it had a duty to indemnify Penda. The magistrate judge recommended judgment for Travelers on the question whether it had a duty to defend. The magistrate judge was of the view that U.S. Sample's complaint against Penda alleged no property damage that would be covered under the insurance policy, but only a loss of profits and reputation damage. The magistrate judge concluded that, under Illinois law, "a claim alleging a loss of use of property or the necessity of scrap[p]ing property as a result of a defective product would bring a complaint under the ambit of property damages...." R.29, Magistrate's Rec. at 5. However, he found no such allegation in U.S. Sample's complaint, and instead characterized it as "involving the sale of defective products by the insured, who then attempts to categorize the cost of remedy for those products as property damage." *Id.* at 4.

Penda filed an objection to the magistrate's recommendation. The district court overruled this objection and held that there were no allegations in the complaint from which it reasonably could be inferred

> that the lithograde styrene sheets supplied by Penda caused actual damage to property belonging to [U.S. Sample], diminished the value of [U.S. Sample] property, resulted in a loss of use of property, or that [U.S. Sample] sought to recover such losses from Penda. It is clear that [U.S. Sample] is seeking redress, not for damage to its own property, but for the damages resulting from receiving a

defective product from Penda, which was not fit for the purpose for which it was sold.

R. 45, Mem.Op. at 11–12. Thus, the district court concluded that Travelers had no duty to defend Penda under the policy. The court also held that, because the duty to defend is broader than the duty to indemnify, Travelers had no duty to indemnify Penda for U.S. Sample's claim.

## II

## ANALYSIS

We review de novo a district court's decision to grant summary judgment. *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 905 (7th Cir.1990). Summary judgment is appropriate only if no genuine issue of material fact exists, and a party is entitled to judgment as a matter of law. *Id.* Because neither party raises the issue of choice of law, in this diversity case, we apply the substantive law of Illinois, the forum state. *Wood v. Mid–Valley Inc.*, 942 F.2d 425, 426–27 (7th Cir.1991). Penda claims that the district court erred in finding that Travelers had no duty to defend and no duty to indemnify in the suit brought by U.S. Sample. Our task is to determine if Travelers is free of these duties as a matter of Illinois law.

A. *The Duty to Defend*

1. Applicable standards

■ The Illinois Supreme Court has recently articulated the legal standards that govern an insurer's duty to defend. *United States Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 161 Ill.Dec. 280, 284–85, 578 N.E.2d 926, 930–31 (1991).

> To determine an insurer's duty to defend its insured, the court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent.... An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underly-

ing complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.... Moreover, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy.... The underlying complaints and the insurance policies must be liberally construed in favor of the insured.

*Id.*, 161 Ill.Dec. at 284, 578 N.E.2d at 930 (emphasis in original) (citations omitted). Consequently, if U.S. Sample's complaint against Penda alleges facts that are within or potentially within policy coverage, Travelers has a duty to defend. *See Ohio Casualty Ins. Co. v. Bazzi Constr. Co.*, 815 F.2d 1146, 1147 (7th Cir.1987). Focusing on the complaint is necessary because the insurer must determine whether it has an obligation to defend at the outset of the litigation. However, this emphasis on the specific allegations of the complaint also creates certain pitfalls for the insured. It leaves the insured at the mercy of its adversary's pleading skills. The adversary may or may not, depending on the individual case, be interested in triggering the insured's coverage. Illinois courts, aware of this pitfall, have given this requirement of focusing on the pleadings a common-sense interpretation. Indeed, Illinois has specifically acknowledged that, when the duty to defend is at issue, the complaint "need not allege or use language affirmatively bringing the claims within the scope of the policy, as the question of coverage should not hinge exclusively on the draftsmanship skills or whims of the plaintiff in the underlying action." *Western Casualty & Surety Co. v. Adams County*, 179 Ill.App.3d 752, 128 Ill.Dec. 621, 623, 534 N.E.2d 1066, 1068 (1989); *International Minerals & Chem. Corp. v. Liberty Mutual Ins. Co.*, 168 Ill.App.3d 361, 119 Ill.Dec. 96, 106, 522 N.E.2d 758, 768, *appeal denied*, 122 Ill.2d 576, 125 Ill.Dec. 218, 530 N.E.2d 246 (1988). In addition, the insurer must defend if it has knowledge of "true but unpleaded facts which when taken together with the allegations in the complaint indicate that the claim is potentially covered by the poli-

cy." *United States Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 193 Ill.App.3d 1087, 140 Ill.Dec. 907, 911, 550 N.E.2d 1032, 1036 (1989), *aff'd*, 144 Ill.2d 64, 161 Ill.Dec. 280, 578 N.E.2d 926 (1991); *see also Kufalk v. Hart*, 636 F.Supp. 309, 310–11 (N.D.Ill.1986); *Associated Indem. Co. v. Insurance Co. of North Am.*, 68 Ill.App.3d 807, 25 Ill.Dec. 258, 265, 386 N.E.2d 529, 536 (1979). Here, too, the Illinois approach has been a pragmatic and moderate one. For instance, in *Wilkin*, 140 Ill.Dec. at 911–12, 550 N.E.2d at 1036–37, the Illinois Appellate Court held that allegations in the complaints filed in other, related cases of which the insurer had actual knowledge were sufficient to alert the insurer to the possibility of a covered claim and therefore triggered the duty to defend. Other cases have made it clear that, in a declaratory judgment action such as this one, the court may consider material outside the complaint that sheds light on the coverage issue. In *Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.*, 122 Ill.App.3d 301, 77 Ill.Dec. 848, 850–51, 461 N.E.2d 471, 473–74 (1983) (citations omitted), the court explained at some length the reason for this departure from an exclusive focus on the complaint:

> It is certainly true that the duty to defend flows in the first instance from the allegations in the underlying complaint; this is the concern at the initial stage of the proceedings when an insurance company encounters the primary decision of whether to defend its insured. However, if an insurer opts to file a declaratory proceeding, we believe that it may properly challenge the existence of such a duty by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's exclusions.... The only time such evidence should not be permitted is when it tends to determine an issue crucial to the determination of the underlying lawsuit ... If a crucial issue will not be determined, we see no reason why the party seeking a declaration of rights should not have the prerogative to present evidence that is accorded generally to a party during a motion for summary judgment in a declaratory proceeding. To require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties.

*Envirodyne*'s rule has been made applicable to both parties. *See Charles H. Eichelkraut & Sons, Inc. v. Bituminous Casualty Corp.*, 166 Ill.App.3d 550, 117 Ill.Dec. 13, 17–18, 519 N.E.2d 1180, 1184–85 (1988). It has specifically been employed to sort out confused pleadings. *See Millers Mutual Ins. Ass'n v. Ainsworth Seed Co.*, 194 Ill.App.3d 888, 141 Ill.Dec. 886, 887–90, 552 N.E.2d 254, 255–58 (1989).

Finally, we note the Illinois Supreme Court's recent reiteration of the standard we must apply in reviewing both the insurance policy and the pleadings submitted in the underlying litigation:

> The underlying complaints and the insurance policies must be liberally construed in favor of the insured. Where a policy provision is clear and unambiguous, its language must be taken in its "plain, ordinary and popular sense." ... A provision is ambiguous if it is subject to more than one reasonable interpretation.... All doubts and ambiguities must be resolved in favor of the insured.

*Wilkin*, 161 Ill.Dec. at 284, 578 N.E.2d at 930 (citations omitted) (quoting *Hartford Accident & Indem. Co. v. Case Foundation Co.*, 10 Ill.App.3d 115, 294 N.E.2d 7, 12 (1973)).

### 2. Application to this case

#### a.

Travelers first submits that the plain language of U.S. Sample's complaint states that U.S. Sample seeks only recovery for lost profits on the contract with Joanna Western, lost profits on identifiable future business with Joanna Western, and damage to its reputation. Travelers then argues that these alleged losses are purely eco-

nomic,[1] and that nowhere does the complaint explicitly attempt to recover for damage to property or persons, which would be within the ambit of policy.

> [T]he allegations in the case at bar did not attempt to recover for property damage to the sample books or its component parts. There were no allegations that the styrene sheets supplied by Penda caused actual damage to property belonging to U.S. Sample or diminished the value of [U.S.] Sample's property or resulted in a loss of use of property.

Appellee's Br. at 14. Consequently, continues Travelers, because there were no allegations that any injury to property occurred, there is no possibility that Penda could become "legally obligated to pay ... damages because of ... property damage," and the coverage of the insurance policy would not be implicated.

As we have already noted, in evaluating this argument, we are bound by the Illinois Supreme Court's teaching, recently reiterated, that, in determining if a duty to defend exists, we must read the underlying complaint liberally and in favor of the insured. *Wilkin*, 161 Ill.Dec. at 284, 578 N.E.2d at 930. We have little difficulty in concluding that U.S. Sample's broad allegations of future profit and reputational damage are purely economic losses and beyond the coverage of the policy. However, the allegation with respect to lost profit from the immediate transaction poses more serious problems. As Penda points out, in addition to the specific relief requested by U.S. Sample, the complaint states that, because of the yellowing, "[t]he lithograde

polystyrene sheets supplied by Penda were unusable and unacceptable, and were rejected by the intended user," Joanna Western. R.1, Ex. B, Complaint at ¶ 18. Joanna Western then refused to pay for the sample books unless U.S. Sample "agreed to replace the defective Sample Books and provide other concessions." R.1, Ex. B, Complaint at ¶ 12. These allegations can be read as stating a claim to recover damage that occurred to the finished styrene sheets, laminated and lithographed, and the sample books, which U.S. Sample was required to replace. This reading is corroborated by the deposition testimony of U.S. Sample's chairman, David R. Schopp, who stated that his company's claim for $200,-000 in "lost profits" was intended to compensate U.S. Sample for the cost of replacing the books damaged by the yellowing. R.32, Deposition of David R. Schopp at 54, 76, 77, 91–92. This testimony strongly indicates that U.S. Sample's claim for "lost profits" is, partially, one for recovery of its costs in repairing the damaged and rejected sample books. *See, e.g., Wilkin*, 140 Ill. Dec. at 911, 550 N.E.2d at 1036 (stating that facts not in the complaint but known to the insurer can serve to inform an insurer that a claim is potentially within the policy's coverage); *Millers Mutual*, 141 Ill. Dec. at 887–90, 552 N.E.2d at 255–58 (use of insured's affidavit to clarify pleadings). Therefore, when evaluated under the applicable standards, U.S. Sample's suit may be read as an attempt to recover for "physical injury to or destruction of" or "loss of use" of the sample books or pages, and is therefore potentially within the bounds of the policy.[2]

---

**1.** The Illinois Supreme Court has defined "economic loss" as " 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property'... as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' " *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 752, 435 N.E.2d 443, 449 (1982) (citations omitted).

**2.** *See also United States Fidelity & Guar. Co. v. Specialty Coatings Co.*, 180 Ill.App.3d 378, 129 Ill.Dec. 306, 316, 535 N.E.2d 1071, 1081 (the

plain language of an identical provision in a comprehensive general liability policy "demonstrates that where the genesis of the relief sought is 'physical injury to tangible property' or 'loss of use of tangible property,' the claim seeks relief from 'property damage' as defined by the contract."), *appeal denied*, 127 Ill.2d 643, 136 Ill.Dec. 609, 545 N.E.2d 133 (1989); *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 212 Ill.App.3d 231, 156 Ill.Dec. 432, 437–40, 570 N.E.2d 1154, 1159–62 (concluding that actions by governments seeking injunctive relief for environmental contamination sought property damage within the meaning of a comprehensive general liability policy), *appeal allowed*, 139 Ill.2d at 598, 159 Ill.Dec. at 110, 575 N.E.2d at

We do not believe that the present case is controlled by *CMO Graphics, Inc. v. CNA Ins.*, 115 Ill.App.3d 491, 71 Ill.Dec. 172, 450 N.E.2d 860 (1983), upon which Travelers relies. In *CMO Graphics*, the court declined to find that the insurer had a duty to defend or indemnify a graphics company, CMO, which had been sued for damages caused by supplying erroneous graphics to an advertising agency. The court found that the underlying complaint filed by the advertising agency sought only to recover lost profits, lost good will and financial investments in printing defective advertising inserts. *Id.*, 71 Ill.Dec. at 175, 450 N.E.2d at 863. It specifically found that the complaint did not attempt to recover for damage to the advertising inserts caused by the defective graphics, and thus did not seek recovery for damage to tangible property. *Id.*, 71 Ill.Dec. at 175–76, 450 N.E.2d at 863–64. Likewise, *Tobi Engineering, Inc. v. Nationwide Mutual Insurance Co.*, 214 Ill.App.3d 692, 158 Ill. Dec. 366, 369–70, 574 N.E.2d 160, 163–64 (1991), which Travelers cited as additional authority, does not help Travelers' position. In that case, the underlying complaint centered on damages resulting from a manufacturer's failure timely to provide nonde-

fective pads to a contractor building a bridge. The court found that there was no indication in the complaint that the defective products had caused any damage to any other product (such as the bridge), or that the plaintiff was attempting to recover for those damages. By contrast, the complaint and the deposition testimony of Mr. Schopp indicate that U.S. Sample is attempting to recover for damage to tangible property, the finished pages and the sample books.

■■ Nor do we believe that Travelers can escape this possible characterization of U.S. Sample's complaint on the ground that the books that were damaged belonged to Joanna Western, and not to U.S. Sample, at the time of the damage and that, consequently, U.S. Sample incurred no damage to its property. Assuming that U.S. Sample did not own the books at the time they were damaged,[3] this argument cannot prevail. First, the policy in question states that it covers liability that the insured is obligated to pay "because of ... property damage." *See* App. at A–47. It does not state that it applies only to damage to property owned by the plaintiff in the underlying action.[4] Second, Illinois cases do

917 (1991); *New Castle County v. Hartford Accident & Indem. Co.*, 933 F.2d 1162, 1191 n. 57 (3d Cir.1991) (Delaware law) (determining that a claim brought by EPA for reimbursement of the money spent investigating and cleaning up environmental contamination sought "damages because of ... property damage"; court concluded that insured's "ultimate liability in that action ... is quite literally 'because of ... property damage'"). *But see Mraz v. Canadian Universal Ins. Co.*, 804 F.2d 1325, 1328–29 (4th Cir.1986) (concluding that state and federal governments' claims for response costs in dealing with environmental damage are not claims for property damage but instead are economic loss).

3. Although the record is not clear, it appears as if U.S. Sample may have "owned" at least a portion of the damaged products. The complaint states that Joanna Western rejected, and U.S. Sample was asked to replace, the damaged sample books. R.1, Ex. B, Complaint at ¶¶ 12, 18.

4. *Cf. Specialty Coatings Co.*, 129 Ill.Dec. at 316, 535 N.E.2d at 1081 (construing identical language in a comprehensive general liability policy, the court stated that "[t]he plain language of

the policy therefore demonstrates that where the genesis of the relief sought is 'physical injury to tangible property' or 'loss of use of tangible property,' the claim seeks relief from 'property damage' as defined by the contract"; therefore costs to remedy property damage caused by environmental contamination are covered "whether the insured must reimburse a party for the cost of cleaning the property or undertake measures itself to cure the injury inflicted upon the environment"); *see also Outboard Marine Corp.*, 156 Ill.Dec. at 437–40, 570 N.E.2d at 1159–62 (governments' actions seeking injunctive relief under environmental statutes sought property damages under comprehensive general liability policy); *New Castle County*, 933 F.2d at 1191 n. 57 (rejecting argument that EPA's claim seeking reimbursement for costs in investigating and cleaning up environmental contamination does not seek compensation for property damage because "EPA has not suffered damage to its own property"; concluding that the insured's "ultimate liability" in the action "is quite literally 'because of ... property damage'"). *But see Mraz*, 804 F.2d at 1328–29 (claims by governments for costs of environmental cleanup did not seek "property damage" under policy; "[w]hile the complaint does allege that property

not consider who owned the property in question when determining if a claim is within policy coverage. For example, in *Elco Industries, Inc. v. Liberty Mutual Insurance Co.*, 46 Ill.App.3d 936, 5 Ill.Dec. 266, 361 N.E.2d 589 (1977), the parties to the underlying lawsuit were a supplier and a manufacturer, and the manufacturer was attempting to recover for the costs it incurred in repairing engines in a recall program, after the supplier's product failed. In that case, the manufacturer did not *own* the products that had been recalled because they had already been sold, but the court held that at least a portion of the repair cost was injury arising from property damage and was within the terms of the insurance policy. *Id.*, 5 Ill.Dec. at 268–69, 361 N.E.2d at 591–92; *Elco Indus. Inc. v. Liberty Mutual Ins. Co.*, 90 Ill.App.3d 1106, 46 Ill.Dec. 319, 323–25, 414 N.E.2d 41, 45–47 (1980) (appeal after remand); *see also Marathon Plastics, Inc. v. International Ins. Co.*, 161 Ill.App.3d 452, 112 Ill.Dec. 816, 821–23, 514 N.E.2d 479, 484–86 (1987) (finding "property damage" that triggered policy coverage when the pipe a supplier sold to a contractor constructing a water system caused the entire system after completion to become useless and diminished in value), *appeal denied*, 119 Ill.2d 559, 119 Ill.Dec. 387, 522 N.E.2d 1246 (1988).

b.

■ Alternatively, Travelers claims that, even if U.S. Sample were basing its claim, in part, on damage to the sample books and

damage occurred, there are no allegations that *plaintiffs* sustained any property damage or that they even have the requisite interest in the Leslie site") (emphasis in original).

**5.** *See also Bituminous Casualty Corp. v. Gust K. Newberg Constr. Co.*, 218 Ill.App.3d 956, 161 Ill.Dec. 357, 361–62, 578 N.E.2d 1003, 1007–08 (1991) (suit seeking recovery for inadequate heating, ventilation, and air conditioning system did not allege property damage that would trigger a duty to defend when there was no allegation of damage to property other than the system itself), *appeal denied*, 143 Ill.2d 636, 167 Ill.Dec. 396, 587 N.E.2d 1011 (1992); *Tobi Eng'g, Inc. v. Nationwide Mutual Ins. Co.*, 214 Ill. App.3d 692, 158 Ill.Dec. 366, 369–70, 574 N.E.2d

finished pages, such recovery would not be "property damage" within the definition of the policy. In making this argument, Travelers invokes the well-established rule in Illinois insurance law that "economic losses sustained as a result of defects in or damage to the insured's own work or product are not covered by a comprehensive general liability insurance policy." *Ohio Casualty*, 815 F.2d at 1148; *see also Hamilton Die Cast, Inc. v. United States Fidelity & Guar. Co.*, 508 F.2d 417, 419 (7th Cir.1975) ("We do not think that the mere inclusion of a defective component, where no physical harm to the other parts results therefrom, constitutes 'property damage' within the meaning of the policy."). Illinois courts view such losses as purely economic, and have maintained that allowing recovery for them would be inconsistent with the purpose of a comprehensive general liability policy, which is meant to protect the insured from liability for injury or damage to the persons or property of others. *Qualls v. Country Mutual Ins. Co.*, 123 Ill.App.3d 831, 78 Ill.Dec. 934, 937, 462 N.E.2d 1288, 1291 (1984).[5] In this case, according to Travelers, U.S. Sample complains only that the sheets Penda supplied turned yellow and caused the sample books to be rejected. There is no indication, continues Travelers, that anything other than the sheets failed, or that the yellowed sheets did any damage to the books or any of its components. Consequently, the only damage sought to be recovered was damage to Penda's own product, which is not property damage within the terms of the policy.

160, 163–64 (1991) (no duty to defend found in a suit alleging that manufacturer delivered defective pads to contractor when there was no allegation that the pads caused damage to any other property that could be covered by the policy); *Ludwig Candy Co. v. Iowa Nat'l Mutual Ins. Co.*, 78 Ill.App.3d 306, 33 Ill.Dec. 605, 606–08, 396 N.E.2d 1329, 1330–32 (1979) (no duty to defend candy manufacturer in suit when there was no allegation of damage to any tangible property other than the candy the manufacturer supplied); *Hamilton Die Cast, Inc. v. United States Fidelity & Guar. Co.*, 508 F.2d 417, 419–20 (7th Cir.1975) (Ohio law) (claim that supplier provided defective tennis racket frames to manufacturer did not allege property damage potentially within a policy when there was no indication that any other property was harmed).

■ Illinois cases make clear that, when an insured causes damage to things other than its own work or product, "property damage" occurs within the scope of the policy. *See Ohio Casualty*, 815 F.2d at 1148. Thus, in *Ohio Casualty*, a duty to defend was found for a claim brought by Grant Park Packing Company alleging that a contractor, Bazzi, had caused damage to Grant Park's garage building, which the contractor had been hired to remodel. Judge Cummings, writing for the panel, noted that

> [b]ecause the Grant Park complaint alleges damage to property other than Bazzi's own work or product, namely the structure of the existing garage, the district court properly concluded that the state court action states a claim for property damage that is potentially within the coverage of the insurance policy.

*Id.* at 1148–49. In addition, Illinois cases also indicate that, when a defective product is "so intertwined with the entire mechanism that the defect and [its] subsequent removal necessarily resulted in damage to the completed product," property damage occurs for the purposes of a general liability policy. *Elco Indus. Inc.*, 5 Ill.Dec. at 268, 361 N.E.2d at 591; *see also Pittway Corp. v. American Motorists Ins. Co.*, 56 Ill.App.3d 338, 13 Ill.Dec. 244, 247, 370 N.E.2d 1271, 1274 (1977); *Eljer Mfg., Inc. v. Liberty Mutual Ins. Co.*, 773 F.Supp. 1102, 1113 (N.D.Ill.1991) ("[W]here repair or replacement of the insured's product requires damaging other parts of the structure in order to perform the replacement or repair, this damage to other parts of the structure constitutes property damage."), *rev'd on other grounds, Eljer Mfg., Inc. v. Liberty Mutual Ins. Co.*, 972 F.2d 805 (7th Cir.1992). Thus, in *Elco*, property damage was found when the process of repairing the defective pins in an engine caused the destruction and replacement of other components in the engine. *Elco Indus. Inc.*, 46 Ill.Dec. at 324, 414 N.E.2d at 46. Likewise, in *Pittway*, 13 Ill.Dec. at 246–47, 370 N.E.2d at 1273–74, when the insured's defective valves were placed on cans of hair spray, and the defective valves caused the cans to be scrapped, property damage occurred within the scope of a comprehensive general liability policy.[6]

■ In this case, the product that allegedly failed was the styrene sheets manufactured by Penda. If the only damage caused was to the sheets, no property damage within the scope of the policy occurred. However, the complaint makes clear that, after Penda supplied the sheets, they were varnished, lithographed, and placed into books. In addition, as part of the finishing process, U.S. Sample attached material swatches to them. Because of the nature of the product that Penda sold, a fair inference is that, if the sheets it provided had to be replaced and discarded, then the varnishing and lithographing, and perhaps the material appended to them, also had to be replaced and discarded. Indeed, the deposition testimony of Mr. Schopp suggests that the yellowing of the sheets required U.S. Sample to make, in some instances, new sample books. R.32, Deposition of David R. Schopp at 91. Consequently, the possibility exists that the alleged defect in Penda's sheets caused the damaging or destruction of components other than those which Penda supplied. Therefore, U.S. Sample's complaint can be read to allege "physical injury to or destruction of tangible property" that would trigger Travelers' duty to defend.

■ In addition, the insurance policy Travelers issued provides an alternative definition of "property damage" as "loss of

---

6. *See also Marathon Plastics, Inc. v. International Ins. Co.*, 161 Ill.App.3d 452, 112 Ill.Dec. 816, 821–22, 514 N.E.2d 479, 484–85 (1987) (property damage within scope of policy found when defective pipe rendered useless entire water system into which it was incorporated), *appeal denied*, 119 Ill.2d 559, 119 Ill.Dec. 387, 522 N.E.2d 1246 (1988); *Eljer Mfg., Inc. v. Liberty Mutual Ins. Co.*, 972 F.2d 805, 814 (7th Cir.1992) (property damage occurs to home upon installation of defective pipe); *W.E. O'Neil Constr. Co. v. National Union Fire Ins. Co.*, 721 F.Supp. 984, 991–92 (N.D.Ill.1989) (property damage potentially within scope of policy found when product of subcontractor created damage to entire building).

use of tangible property which has not been physically injured or destroyed...." In this case, even if the failure of the sheets did not cause physical injury to or destruction of the lithographing, varnish, material, and books, it appears that Joanna Western and U.S. Sample "lost the use" of these components when Penda's sheets became unusable and had to be replaced. Therefore, it also is possible that "property damage" occurred under this definition of the policy, which would place on Travelers a duty to defend. *See W.E. O'Neil Constr. Co. v. National Union Fire Ins. Co.,* 721 F.Supp. 984, 994 (N.D.Ill.1989); *see also Wilkin,* 161 Ill.Dec. at 284–85, 578 N.E.2d at 930–31; *Trovillion v. United States Fidelity & Guar. Co.,* 130 Ill.App.3d 694, 86 Ill.Dec. 39, 43–44, 474 N.E.2d 953, 957–58 (1985) (" 'The insurer can safely and justifiably refuse to defend only when the allegations *clearly* show on their face that the claim is beyond policy coverage, ... for the duty to defend is broader than the duty to pay.' ") (quoting *LaRotunda v. Royal Globe Ins. Co.,* 87 Ill.App.3d 446, 42 Ill. Dec. 219, 224, 408 N.E.2d 928, 933 (1980) (emphasis in original) (citations omitted)).

### B. *The Policy Exclusions*

     Finally, in a page and a half of its brief, Travelers contends in the most cursory fashion that it has no duty to defend because U.S. Sample's claim is explicitly precluded by certain exclusions in the insurance policy. We first note that such summary treatment comes dangerously close to waiver of the argument. *See* Fed. R.App.P. 28(a)(5); *Beard v. Whitley County REMC,* 840 F.2d 405, 408–09 (7th Cir. 1988). Certainly, our admonition with respect to practice in the district courts ought to be applicable here as well:

     Particularly in cases like this one, an insurance company is under an obligation to do more than inundate the district court with arguably applicable policy provisions and force the court to wade through the provisions in an attempt to determine which one might provide an appropriate basis for excluding coverage. For an exclusionary provision to be properly raised before the district court, it is not enough for an insurance company merely to recite it to the court in a long description of the policy; it must explain to the court why the provision is applicable in the case before it and how the provision operates to exclude the disputed claim from coverage under the policy.

*Ohio Casualty,* 815 F.2d at 1149–50. Illinois law is clear that an exclusionary provision will negate a duty to defend only if it is clear and free from doubt that the policy's exclusion prevents coverage. *See International Minerals & Chem. Corp.,* 119 Ill.Dec. at 100, 522 N.E.2d at 762; *see also Wilkin,* 161 Ill.Dec. at 287, 578 N.E.2d at 933. We have reviewed the cursory treatment given the exclusions by Travelers and cannot say that, at least on the question of duty to defend, it is clear that they excuse performance on the part of Travelers.

     Accordingly, because it cannot be said that U.S. Sample's complaint is not potentially within the coverage of the insurance policy that Travelers issued Penda, we hold that Travelers has a duty to defend Penda in the underlying action by U.S. Sample. The decision of the district court on this question is reversed.

### C. *The Duty to Indemnify*

     The district court held that if Travelers had no duty to defend Penda, it necessarily had no duty to indemnify because, under Illinois law, the duty to defend is broader than the duty to indemnify. Because we have found that Travelers has a duty to defend Penda, Illinois law is clear that the determination of whether Travelers has a duty to indemnify is not ripe until the underlying litigation is terminated. *See Aetna Casualty & Surety Co. v. Prestige Casualty Co.,* 195 Ill.App.3d 660, 142 Ill.Dec. 689, 691, 553 N.E.2d 39, 41 (1990) ("The duty to indemnify arises only after the insured becomes legally obligated to pay damages in the underlying action."); *Maryland Casualty Co. v. Chicago & N.W. Transp. Co.,* 126 Ill.App.3d 150, 81 Ill.Dec. 289, 293–94, 466 N.E.2d 1091, 1095–96 (1984); *United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.,* 953 F.2d 334,

338 (7th Cir.1992). Accordingly, we vacate the decision of the district court granting summary judgment to Travelers on the issue of its duty to indemnify, and direct the district court to dismiss that portion of Travelers' complaint without prejudice, leaving open the possibility of resolving the indemnity issue later, when the underlying litigation with U.S. Sample is terminated. *See Tews Funeral Home, Inc. v. Ohio Casualty Ins. Co.*, 832 F.2d 1037, 1047 (7th Cir.1987).

### Conclusion

For the foregoing reasons, the judgment of the district court is reversed in part and vacated in part. The case is remanded for further proceedings consistent with this opinion. Penda may recover its costs on this appeal.

REVERSED in part, VACATED in part, and REMANDED.