# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Universal Underwriters Insurance Co. v. LKQ Smart Parts, Inc.*, 2011 IL App (1st) 101723

| | |
|---|---|
| Appellate Court Caption | UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Plaintiff-Appellee, v. LKQ SMART PARTS, INC., LKQ CORPORATION and ILLINOIS FARMERS INSURANCE COMPANY, Defendants-Appellants. |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-1723 |
| Filed | December 16, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a declaratory judgment action by a garage's insurer seeking a determination that the insurer had no duty to defend and indemnify the garage from the underlying spoliation of evidence claim made by the father of a girl who was killed in the crash of a vehicle in which she was a passenger and the insurer of the vehicle, the entry of summary judgment for the garage's insurer was reversed, since the spoliation of evidence claim, which was based on the garage's destruction of the vehicle, sought damages resulting from the loss of use of the vehicle and was covered by the auto inventory provisions of garage's policy; therefore, the cause was remanded for the entry of summary judgment for the insured garage. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-12664; the Hon. Sophia H. Hall, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Kevin M. Forde, Joanne R. Driscoll, and Kevin R. Malloy, all of Kevin M. Forde, Ltd., of Chicago, for appellants.

Lawrence D. Mishkin and Timothy E. Hirsch, both of Silver & Mishkin, LLC, of Chicago, and Brian E. McGovern and James R. Walsh, both of McCarthy, Leonard & Kaemmerer, L.C., of Chesterfield, Missouri, for appellee.

Panel

PRESIDING JUSTICE EPSTEIN delivered the judgment of the court, with opinion.

Justices McBride and Howse concurred in the judgment and opinion.


**OPINION**

¶ 1    Universal Underwriters Insurance Company (Universal) brought an action for declaratory judgment against its insured, LKQ Corporation and its subsidiary LKQ Smart Parts, Inc. (collectively LKQ), and an alleged additional insured, Illinois Farmers Insurance Company (Farmers), seeking a declaration that its liability insurance policy did not cover a spoliation of evidence claim brought against Farmers and LKQ. On cross-motions for summary judgment, the trial court found that the policy did not cover the spoliation claim and, as a result, Universal had no duty to defend or indemnify Farmers or LKQ. The trial court granted summary judgment in favor of Universal and denied LKQ's and Farmers' summary judgment motions. LKQ appeals the order granting summary judgment in favor of Universal and denying summary judgment to LKQ. For the reasons that follow, we reverse.

¶ 2                                    BACKGROUND

¶ 3    This appeal arises out of a series of lawsuits involving a single-vehicle accident. On July 2, 2004, Michael Widawski lost control of the Nissan Pathfinder he was driving on a Wisconsin highway. Monika Gramacki, the only passenger, was thrown from the vehicle as it rolled over, and she died from her injuries. Following the accident, the Nissan Pathfinder was initially towed to a collision repair shop in DeForest, Wisconsin. Farmers, as insurer of the vehicle, then contacted LKQ, a vehicle repair, storage, and salvage business, allegedly to hold and secure the vehicle. In late September 2004, LKQ transported the Pathfinder from the DeForest location to its salvage yard in Hustiford, Wisconsin. Sometime after, while the vehicle was at LKQ's salvage yard, the vehicle was destroyed.

¶ 4    John Gramacki, as independent administrator of the estate of his daughter Monika, filed suit against Nissan Motor Company, Ltd., and Nissan North America, Inc., bringing products liability claims based on an allegedly faulty latch in the Pathfinder's rear door. Gramacki also asserted claims against Farmers for spoliation of evidence, alleging that Farmers'

"destruction of the subject Nissan Pathfinder deprived Plaintiff of the key piece of evidence necessary to prove an otherwise valid product liability/negligence lawsuit under the Survival and Wrongful Death Acts against the manufacturer of the vehicle." Gramacki claimed that Farmers' "breach of that duty deprived Plaintiff of his ability and right to have the subject Nissan Pathfinder tested and analyzed by experts of his own choice to determine its role in Monika Gramacki's death." Gramacki further alleged that "prior to the destruction of the subject Nissan Pathfinder, it had a reasonable probability of succeeding in a products liability negligence lawsuit *** against the manufacturer of the vehicle for the latch failure on the door from which decedent, Monika Gramacki, was ejected causing her injury and death."

¶ 5       After Gramacki filed suit, Farmers brought a third-party complaint against LKQ, recounting the allegations in the Gramacki complaint. In a count for contribution, Farmers alleged that "LKQ negligently destroyed the Pathfinder without the knowledge or consent of Farmers or [Gramacki]." Specifically, Farmers alleged that LKQ failed to "exercise reasonable care," "preserve the Pathfinder," or "obtain authorization from Farmers or [Gramacki] prior to the destruction of the Pathfinder." Farmers claimed that "should it be found that [Gramacki] is entitled to recover from Farmers, it will not be solely on account of the conduct of Farmers, but will be based on the negligent acts or omissions of LKQ." Nissan later brought a third-party negligence cause of action against LKQ, complaining that if LKQ had "preserved the condition of the subject Pathfinder, [Nissan] would not have been sued or would have been summarily dismissed from the underlying lawsuit filed by [Gramacki]."

¶ 6       After receiving the third-party complaint from Farmers, LKQ made a claim under an insurance policy issued by Universal and asked Universal to defend against Farmers' claims. Farmers then submitted a claim to Universal, arguing that it was an additional insured under the policy. On November 26, 2007, Universal sought a declaratory judgment that it had no duty to defend or indemnify LKQ or Farmers under the policy. Subsequently, on September 5, 2008, the underlying suit against Nissan and Farmers, with LKQ named as a third-party defendant, was dismissed after the parties settled the action. While LKQ and Farmers were parties to the settlement, Universal did not participate in, or contribute to, the settlement of the underlying suit. On March 19, 2009, LKQ filed a counterclaim in Universal's declaratory judgment action, seeking a declaration that Universal had a duty to defend and indemnify it in connection with Farmers' third-party complaint.

¶ 7       In the trial court, the parties focused their arguments regarding coverage on two policy sections. The first, entitled "Auto Inventory Physical Damages" provides, in relevant part:

> "WE will pay for LOSS of or to a COVERED AUTO from any cause, including sums an INSURED legally must pay as damages as a result of LOSS to a CUSTOMER'S AUTO, except as stated otherwise in the declarations or excluded.
>
> WE have the right and duty to defend any suit for damages for LOSS to a CUSTOMER'S AUTO. However, WE have no such duty for LOSS not covered by this Coverage Part.
>
> * * *
>
> COVERED AUTO means an AUTO (1) owned by or acquired by YOU or (2) not

owned by YOU but in YOUR care, custody, or control.

CUSTOMER'S AUTO means a COVERED AUTO not owned or acquired by YOU but in YOUR care, custody or control for safekeeping, storage, service or repair.

\* \* \*

LOSS means direct and accidental physical loss or damage, occurring during the Coverage Part period. LOSS, with respect to a CUSTOMER'S AUTO, includes resulting loss of use."

In a separate section, simply called "Garage," the policy further provides:

"WE will pay all sums the INSURED legally must pay as DAMAGES (including punitive DAMAGES where insurable by law) because of INJURY to which the insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.

WE have the right and duty to defend any SUIT asking for these DAMAGES.

WE have no right or duty to defend SUITS for DAMAGES not covered by or declared for this Coverage Part.

\* \* \*

DAMAGES means amounts awardable by a court of law.

INJURY means, with respect to:

Group 1–bodily injury, sickness, disease or disability (including death resulting from any of these) or damage to or loss of use of tangible property \*\*\*."

¶ 8    Universal filed a motion for summary judgment requesting the circuit court to declare that it had no duty to defend or indemnify either LKQ or Farmers under the policy under either the auto inventory or garage policy part. LKQ and Farmers both filed motions for summary judgment, requesting that the court declare that Universal had a duty to defend and indemnify under the policy. Concluding that Universal had no duty to indemnify or defend LKQ or Farmers under the policy, the circuit court entered an order granting Universal's motion for summary judgment and denying the motions for summary judgment of LKQ and Farmers. LKQ and Farmers filed a joint notice of appeal.

¶ 9                                                   ANALYSIS

¶ 10    At the outset, we address Universal's request to dismiss the appeal of Farmers for failure to comply with Illinois Supreme Court Rule 343 (Ill. S. Ct. R. 343 (eff. July 1, 2008)). After filing a joint notice of appeal with LKQ, Farmers did not file a docketing statement as required by Illinois Supreme Court Rule 312, nor did it pay the necessary docketing fee as required by Illinois Supreme Court Rule 313. Ill. S. Ct. R. 312 (eff. Feb. 10, 2006); Ill. S. Ct. R. 313 (eff. Feb. 1, 1994). Farmers also did not file an appellant's brief as required by Illinois Supreme Court Rule 343 and did not join in LKQ's briefs. Ill. S. Ct. R. 343 (eff. July 1, 2008); see also *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131 (1976) ("[I]t is permissible for a reviewing court in the exercise of its inherent authority to dismiss an appeal for the appellant's failure to file its brief within the time prescribed by

rules of this court as suggested by the committee comment to our Rule 343."); *Steinbrecher v. Steinbrecher*, 312 Ill. App. 3d 289 (2000) (dismissing appellant's appeal where he did not file a brief or join in briefs filed by co-appellant), *rev'd on other grounds*, 197 Ill. 2d 514 (2001). Farmers has never appeared, and after being served with Universal's appellee brief requesting dismissal of Farmers' appeal, Farmers did not respond. It is apparent that after filing a notice of appeal with LKQ, Farmers has abandoned the appeal. Accordingly, we exercise our authority under the Illinois Supreme Court Rules to dismiss the appeal of Farmers. We will address the arguments raised by LKQ on appeal.

¶ 11    LKQ argues that the trial court erred in granting Universal's motion for summary judgment and denying LKQ's motion for summary judgment. Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). "Although the denial of a motion for summary judgment is ordinarily not a final order and is not appealable standing alone [citation], we may properly review an order denying a motion for summary judgment if, as in the instant case, the appeal from that order is brought in conjunction with the appeal from an order granting a cross-motion for summary judgment on the same claim [citation]." *Fremont Casualty Insurance Co. v. Ace-Chicago Great Dane Corp.*, 317 Ill. App. 3d 67, 72-73 (2000). Our review of a trial court's ruling on summary judgment is *de novo*. *Id.* at 73.

¶ 12    The construction of the provisions of an insurance policy is also a question of law, subject to *de novo* review. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001). "An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). "The court's primary objective in construing an insurance policy is to ascertain and give effect to the intentions of the parties as expressed in the policy language." *Illinois Farmers Insurance Co. v. Hall*, 363 Ill. App. 3d 989, 993 (2006) (citing *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005)).

¶ 13    To determine if an insurer has a duty to defend the insured, the court must compare the allegations in the underlying complaint to the relevant provisions of the insurance policy. *Illinois State Bar Ass'n Mutual Insurance Co. v. Mondo*, 392 Ill. App. 3d 1032, 1037 (2009) (quoting *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992)). " 'The allegations in the underlying complaint must be liberally construed in favor of the insured.' " *Id.* (quoting *Outboard Marine Corp.*, 154 Ill. 2d at 125). "As a general rule, where the factual allegations of a complaint fall within, or even potentially within, the scope of an insurance policy's coverage, the insurer is obligated to defend its insured, even if the allegations are groundless, false, or fraudulent." *Fremont*, 317 Ill. App. 3d at 73. "The insurer justifiably refuses to defend the insured if it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the cause within or potentially within coverage." *Certain Underwriters at Lloyd's, London v. Boeing Co.*, 385 Ill. App. 3d 23, 39 (2008) (citing *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill. 2d 433, 439 (1994)).

¶ 14 The duty to defend is broader than the duty to indemnify. " 'The duty to indemnify arises only when the insured becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy.' " *Travelers Insurance Co.*, 197 Ill. 2d at 293 (quoting *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 52 (1987)). " '[T]he question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it.' " *Id.* (quoting *Outboard Marine Corp.* 154 Ill. 2d at 127) "Once the insured has incurred liability as a result of the underlying claim, an insurer's duty to indemnify arises only if 'the insured's activity and the resulting loss or damage *actually* fall within the *** policy's coverage.' " (Emphasis in original.) *Id.* (quoting *Outboard Marine Corp.*, 154 Ill. 2d at 128). An insured becomes legally obligated to pay when a judgment or settlement is reached between the parties. *Douglas v. Allied American Insurance*, 312 Ill. App. 3d 535, 541 (2000).

¶ 15 I. Coverage Under the Auto Inventory and Garage Policy Parts

¶ 16 Before comparing any allegation of the complaint to the provisions of the insurance policy, we consider the relevant sections of the policy under which LKQ asserts coverage. Although the parties dispute whether coverage exists under both the garage and auto inventory policy sections, we conclude that only the auto inventory policy part provides coverage.

¶ 17 LKQ first argues that coverage exists under the "Auto Inventory Physical Damage" policy part, which requires Universal to pay for "LOSS of or to a COVERED AUTO from any cause, including sums an INSURED legally must pay as damages as a result of LOSS to a CUSTOMER'S AUTO." "CUSTOMER'S AUTO" means a "COVERED AUTO not owned or acquired by YOU but in YOUR care, custody or control for safekeeping, storage, service or repair." "COVERED AUTO" means an "AUTO (1) owned by or acquired by YOU or (2) not owned by YOU but in YOUR care, custody, or control." LKQ also argues that coverage exists under a separate policy part, simply entitled "Garage." Under this policy part, Universal "must pay all sums the INSURED legally must pay as DAMAGES *** because of INJURY to which the insurance applies." "INJURY" includes "damage to or loss of use of tangible property." The garage operations policy excludes coverage for "INJURY to *** personal property, including AUTOS, owned by, rented or leased to, used by, *in the care, custody or control of*, or being transported by the INSURED" (emphasis added).

¶ 18 Under the plain language of the policy, then, the auto inventory provisions cover vehicles that are in LKQ's "care, custody or control," while the garage provisions specifically exclude coverage for vehicles in LKQ's "care, custody or control." The parties agree that under the auto inventory policy part, the Nissan Pathfinder meets the definition of "covered auto" and "customer's auto" and was therefore in LKQ's care, custody or control. It would seem that this would end any dispute as to which policy part could possibly provide coverage for claims involving the Nissan Pathfinder. If the vehicle was in LKQ's "care, custody or control," the auto inventory provisions apply and the garage provisions do not.

¶ 19 Nevertheless, without presenting its arguments in the alternative, LKQ contends that the

garage policy's "care, custody or control" exclusion does not apply to the underlying claims against the insured. LKQ fails to explain how the Nissan Pathfinder could be in LKQ's care, custody and control under one policy section while simultaneously *not* under LKQ's care, custody or control under another section of the same policy. Nor does LKQ offer any reason why the "care, custody or control" language in the garage policy part exclusion could possibly warrant a different construction from the identical language in the auto inventory policy part. See *Hartford Accident & Indemnity Co. v. Case Foundation Co.*, 10 Ill. App. 3d 115, 123 (1973) ("In the construction of insurance policies, it is a general rule that absent language to the contrary, a word or phrase in one part is presumed to have the same meaning when it is used in another part of a policy."). LKQ concedes that the Nissan Pathfinder was in its "care, custody or control," and the garage policy part plainly excludes coverage for property in LKQ's "care, custody or control." The garage policy part simply does not apply here, and we therefore need not address whether the garage policy part covers the spoliation claim.

¶ 20                              II. Coverage for the Spoliation Claim

¶ 21        Having narrowed our focus to the auto inventory policy part, we turn to the central issue on appeal: whether the auto inventory provisions cover the underlying claim against the insured for spoliation of evidence. LKQ contends that Gramacki's claim for spoliation of evidence seeks "damages as a result of *** direct and accidental physical loss or damage *** includ[ing] resulting loss of use" of the Nissan Pathfinder. Universal counters that because Gramacki's spoliation suit seeks damages measured by the diminution of value of Gramacki's products liability claim, which Universal describes as "intangible property," the policy does require Universal to defend against or provide indemnity for the Gramacki claim. We agree with LKQ that the policy covers Gramacki's spoliation claim and triggers Universal's duty to defend and duty to indemnify.

¶ 22        In determining whether the policy covers Gramacki's claim,[1] we first consider whether the Gramacki complaint alleges "loss"–"direct or accidental physical loss or damage *** includ[ing] resulting loss of use"–of a "customer's auto." Assuming the complaint contains allegations of "loss," we then must consider whether the damages that Gramacki seeks in the complaint are "as a result of" such "loss."

¶ 23        As to the first question, while the parties agree that the Nissan Pathfinder meets the definition of "customer's auto," Universal contends that the Gramacki complaint contains no allegations of "physical loss or damage" or "resulting loss of use." According to Universal, the only "property" at issue in the complaint is Gramacki's cause of action, which is not tangible property. We do not agree with Universal's characterization of the allegations

---

[1]While we recognize that Gramacki's spoliation claim is only brought against Farmers, our reference to the "Gramacki claim" and the "Gramacki complaint" describes both the Gramacki claim against Farmers and Farmers' third-party complaint against LKQ. The allegations in the Gramacki and Farmers complaints are not materially different, and on appeal the parties do not draw any distinction between the allegations in these complaints.

-7-

in the complaint.

¶ 24	The Gramacki complaint alleges that the Nissan Pathfinder "was discarded and destroyed" and that Farmers "ordered the destruction of the subject Nissan Pathfinder." Farmers' third-party complaint for contribution lodges the same allegations against LKQ, claiming that LKQ "negligently destroyed the Pathfinder without the knowledge or consent of Farmers." Our supreme court has explained that "to the average, ordinary person, tangible property suffers a 'physical' injury when the property is altered in appearance, shape, color or in other material dimension." *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 301-02 (2001). In light of the allegations in the Gramacki and Farmers complaints describing the destruction of the Nissan Pathfinder, we find that the complaints clearly allege "physical loss or damage" to the vehicle.

¶ 25	The Gramacki complaint also alleges "loss of use" of the Nissan Pathfinder resulting from its destruction, which falls within the policy definition of "loss." Gramacki alleges that because the vehicle was destroyed, he no longer has the ability to use the vehicle in support of his products liability claim. Specifically, Gramacki alleges that by destroying the vehicle, Farmers "deprived Plaintiff of his ability and right to have the subject Nissan Pathfinder tested and analyzed by experts of his own choice to determine its role in Monika Gramacki's death." Gramacki's inability to use the vehicle in the suit is a direct consequence of its destruction, and the spoliation claim therefore seeks damages as a result of the loss of use of the vehicle.

¶ 26	The crux of Universal's argument is that a spoliation claim seeks to recover damages to a cause of action, and because such damage is not "physical loss or damage," the complaint contains no allegations of physical injury to tangible property. The Gramacki complaint clearly alleges "loss" as required by the policy: the complaint alleges physical loss or damage when it describes the destruction of the Nissan Pathfinder and it alleges resulting loss of use when it describes Gramacki's inability to use the vehicle in support of his products liability claim. Universal cannot avoid the factual allegations in the complaint by characterizing those allegations in terms of the damages sought in a spoliation claim. We must look to the factual allegations supporting the claim to determine whether the policy covers the claim. *Pekin Insurance Co. v. Dial*, 355 Ill. App. 3d 516, 520 (2005) ("The factual allegations of the complaint, rather than the legal theory under which the action is brought, determine whether there is a duty to defend."); *International Insurance Co. v. Rollprint Packaging Products, Inc.*, 312 Ill. App. 3d 998, 1007 (2000) ("[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy."); *Santa's Best Craft, L.L.C. v. Zurich American Insurance Co.*, 408 Ill. App. 3d 173, 184 (2010) ("To determine whether the claimed loss was in fact covered by the policy, we must compare *the allegations in the underlying lawsuit* to the language of the policy itself." (Emphasis added.)). We conclude that the Gramacki complaint clearly alleges physical loss or damage to the Nissan Pathfinder and Gramacki's loss of the ability to use the vehicle as evidence in the products liability action.

¶ 27	Having found that the Gramacki complaint contains allegations of "loss," we now must consider whether the damages that Gramacki seeks in the complaint are "as a result of" this "loss." To support its argument that the policy does not provide coverage, Universal cites a

single decision, *Essex Insurance Co. v. Wright*, 371 Ill. App. 3d 437 (2007). For the reasons below, we do not find Universal's interpretation of *Essex* persuasive. We conclude, rather, that the plain language of the policy requires a finding that the damages Gramacki seeks in his spoliation claim are as a result of "loss."

¶ 28 In *Essex*, this court considered coverage for a spoliation of evidence claim under the property damage provisions of a general commercial liability insurance policy. Similar to the policy provisions here, the policy at issue in *Essex* required the insurance company to pay for "damages because of *** 'property damage,' " with "property damage" defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property that is not physically injured." (Internal quotation marks omitted.) *Essex*, 371 Ill. App. 3d at 439. The insurer sought a declaratory judgment that the policy did not provide coverage for a spoliation of evidence claim against the insured, an automobile-recycling business that was sued for spoliation of evidence after it destroyed a vehicle that was the subject of a products liability action. *Id.* at 438-39. To support its contention that the policy covered the spoliation claim, the insured argued that the products liability cause of action was "a form of property" covered by the insurance policy. *Id.* at 440. The court "reject[ed] that notion," concluding that "a cause of action does not qualify as tangible property" and that the policy therefore "does not cover the diminution in the value of appellant's products liability claim." *Id.*

¶ 29 Citing *Essex* as its only authority, Universal claims that because a spoliation claim seeks to recover damages to a cause of action, the damages sought in a spoliation claim are not "damages because of physical injury to tangible property." We find that *Essex* did not reach such a sweeping conclusion, and we reject Universal's attempt to stretch *Essex* beyond its holding.

¶ 30 We agree with Universal that the *Essex* court found that the claim for spoliation, like the claim for spoliation before us, can be described as seeking recovery for the "diminution of value of the product liability claim resulting from the destruction of evidence." *Essex*, 371 Ill. App. 3d at 440; see also *Fremont Casualty Insurance Co. v. Ace-Chicago Great Dane Corp.*, 317 Ill. App. 3d 67, 75 (2000) (An action for spoliation "is predicated upon the breach of a duty to preserve evidence and that the damage flowing therefrom is resulting inability to prove a cause of action in the absence of such evidence." (citing *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 195-96 (1995))). We also agree that a cause of action does not qualify as tangible property, and it can therefore be said that a spoliation suit seeks to recover damages to "intangible property." *Essex*, 371 Ill. App. 3d at 440. Thus, where an insured argues that a policy covers a spoliation claim because it is the *cause of action* that constitutes the covered property, as the insured in *Essex* did, we are in full agreement with the *Essex* court that a cause of action does not meet the definition of "physical injury to tangible property" and cannot support a finding of coverage. *Id.*

¶ 31 What Universal misses is that the insured in *Essex* attempted to characterize the product liability claim as a "form of property covered by the [insurance policy]," without reference to the factual allegations of physical damage to property supporting the spoliation claim. *Id.* Faced with this argument, the *Essex* court simply rejected the insured's contention that

damages to a cause of action constitute "physical injury to tangible property."[2] *Id.* In contrast, here LKQ does not argue that Gramacki's products liability action is the property that is damaged. LKQ instead points to the destruction of the Nissan Pathfinder and Gramacki's resulting inability to use it in his lawsuit as the "loss" under the policy.

¶ 32    Our view of *Essex* is supported by the appellate court's recent decision in *United Fire & Casualty Co. v. Keeley & Sons, Inc.*, 381 Ill. App. 3d 1119 (2008). In *Keeley & Sons*, a case decided after *Essex* yet cited by neither party, the insured was sued for spoliation based on its alleged destruction of an I-beam that was to be used in a personal injury suit. *Id.* at 1120-21. When the insured attempted to avoid the "care, custody, and control" exclusion by arguing that the property at issue in the spoliation claim was the "lawsuit of the employees and codefendants in the underlying action"–the same argument presented by the insured in *Essex*–the court concluded that "coverage does not apply because only injury to tangible property is included in the insuring agreement." *Id.* at 1124. The court reiterated the finding in *Essex* that " '[p]roperty damage[ ] is limited to damage to tangible property. The damage to [a] cause of action is not damage to tangible property.' " (Internal quotation marks omitted.) *Id.* (quoting *Essex*, 371 Ill. App. 3d at 440).

¶ 33    While the insured in *Keeley & Sons* argued that the property at issue was the underlying cause of action, in order to avoid the "care, custody or control" exclusion, the insured also argued that it was being sued because of damage to the I-beam and the resulting loss of use of the I-beam. *Id.* The appellate court agreed:

> "[I]t could be said that Keeley is being sued because of the damage to and loss of use of the I-beam itself. This would seem to conform with the definition of property damage in the policy, because the loss of use of the I-beam as evidence was a result of physical injury to tangible property." (Emphasis omitted.) *Id.*

Ultimately, the court found that the policy before it did not cover the spoliation claim because the "care, custody or control" provision excluded coverage. *Id.* We agree with the *Keeley & Sons* court, however, that a spoliation claim seeks damages as a result of the physical injury to and loss of use of tangible property. While the court in *Essex* never had occasion to consider whether the damages sought in a spoliation claim are as a result of damages to tangible property, here, as in *Keeley & Sons*, this is the insured's principal argument for coverage. LKQ points to the clear factual allegations of the Gramacki complaint that describe the destruction of the Nissan Pathfinder and detail Gramacki's inability to use the vehicle as evidence in the lawsuit. We conclude that the damages Gramacki seeks, even if measured by the diminution in value in Gramacki's products liability claim, are damages that are a result of the destruction of the vehicle and the loss of use of that vehicle.

---

[2] Upon review of the briefs on appeal in *Essex*, it is clear the insured argued that the only property at issue was its products liability cause of action in order to avoid a finding that the policy excluded coverage because the vehicle was in the "care, custody, and control" of the insured. The appellant claimed that because the cause of action was the only property at issue, that property was obviously not in the "care, custody or control" of the insured.

¶ 34    We note that the parties have not cited any authority from other jurisdictions addressing whether the policy provisions before us cover a claim for spoliation. We have only found two conflicting opinions, both from federal courts in Florida applying Florida law, that have addressed whether policy provisions like those before us cover a spoliation claim. In *Omega Forensic Engineering, Inc. v. RLI Insurance Co.*, 682 F. Supp. 2d 1336 (S.D. Fla. 2010), the insured was sued for spoliation of evidence based on the alleged destruction of a water heater that was evidence in a products liability claim. *Id.* at 1337. The court found that the claim against the insured did not allege property damage, but only alleged "that the loss of the water heater impaired its ability to pursue a products liability complaint against the manufacturer." (Internal quotation marks omitted.) *Id.* at 1342. The court therefore concluded that the spoliation claim was not one for " 'damages because of "bodily injury" or "property damage" under the language of the policy.' " *Id.* It is unclear whether the insured in *Omega* argued that the actual destruction of the water heater and the loss of use resulting from its destruction constituted "property damage." In any event, we respectfully disagree with the *Omega* court that the issue before it was "whether and to what extent an action for spoliation of evidence constitutes 'property damage' under a commercial general liability policy." *Id.* at 1339. The proper question as to coverage under a policy like the one in *Omega* and like the one here is whether the claim against the insured seeks damages "because of" or "as a result of" physical loss or damage. See *Keeley & Sons*, 381 Ill. App. 3d at 1124. We cannot agree with the result reached in *Omega*, and we are not persuaded by the *Omega* court's reasoning, particularly where it conflicts with the Illinois Appellate Court's decision in *Keeley & Sons*.

¶ 35    We find the better interpretation of the policy language, in line with the decision in *Keeley & Sons*, is found in *Universal Collision Center, Inc. v. Travelers Indemnity Co. of Connecticut, Inc.*, No. 4:09-CV-472-SPM, 2010 WL 2015242 (N.D. Fla. May 20, 2010). There, the court considered whether a spoliation claim, based on the insured's alleged destruction of a vehicle's right wheel assembly, was covered by a policy that required the insurer to pay for " 'all sums the insured legally must pay as damages for "loss" to a "customer's auto" or "customer's auto equipment" left in the insured's care while the insured is . . . storing it in [Plaintiff's] garage operations.' " *Id.* at *2. "Loss" was defined as " 'direct and accidental loss or damage and . . . any resulting loss of use.' " *Id.* at *3. The court concluded that the underlying "plaintiffs' loss of the use of the right wheel assembly for evidentiary purposes constitutes a loss of the use of a component of the customer's vehicle under the Policy." *Id.* We find that this view of a spoliation claim–focusing on whether there are facts alleged that meet the definition of "property damage" or "loss" under the policy–is the better one. This is the approach the court took in *Keeley & Sons* and it is the approach we take here.

¶ 36    By focusing solely on the measure of damages in the spoliation claim as the "diminution of value" of the cause of action, Universal not only ignores the factual allegations of physical injury to property, it misapplies the rules regarding coverage of intangible losses. It is true that intangible losses and purely economic losses do not constitute "physical injury to tangible property" or "physical loss or damage." See, *e.g.*, *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 312 (2001) ("[U]nder its plain and ordinary meaning,

-11-

the phrase 'physical injury' does not include intangible damage to property, such as economic loss."); *Mutlu v. State Farm Fire & Casualty Co.*, 337 Ill. App. 3d 420, 427 (2003) (quoting *American Home Assurance Co. v. Libbey-Owens-Ford Co.*, 786 F.2d 22, 25 (1st Cir. 1986) (noting that a revision of the comprehensive general liability policy "added the modifier 'physical' injury to the definition of 'property damage' in order to restrict recovery for intangible losses. Therefore, under this language, some physical injury to tangible property must be shown to trigger coverage." (Internal quotation marks omitted.))); *West Bend Mutual Insurance Co. v. People*, 401 Ill. App. 3d 857, 866 (2010) (finding no coverage because "the underlying plaintiffs' complaints *** alleged economic loss but have not alleged 'property damage' within the purview of the [policy]"). This is exactly what the *Essex* court found: an insured cannot use the loss to intangible property as the basis for coverage under a policy that requires physical loss or damage.

¶ 37    *Essex* and these other cases do not stand for the proposition, however, that there is no coverage just because a claim against an insured seeks damages for intangible losses. A policy provision like the one before us covers claims for intangible or economic damages where there is physical injury to covered property and the damages sought arise from that property damage. See, *e.g.*, *Wausau Underwriters Insurance Co. v. United Plastics Group, Inc.*, 512 F.3d 953, 956-57 (7th Cir. 2008) ("As in tort law *** so in liability-insurance law, once there is damage to property the victim can recover the nonproperty, including business, losses resulting from that damage and not just the diminution in the value of the property."). This is the consensus interpretation of these standard provisions in liability insurance policies:

> "Liability policies cover not only damages *for* property damage, but damages *because of, on account of* or *by reason of* property damage. Accordingly, once covered property damage exists, all consequential damages are covered ***. In short, even though an item of damage is not covered *as* property damage, it can be covered if it constitutes a consequential damage flowing from covered property damage." (Emphasis in original.) Allan D. Windt, Insurance Claims and Disputes § 11.1, at 11-17 through 11-18 (5th ed. 2007) (collecting cases).

See also 2 Jeffrey W. Stempel, Stempel on Insurance Contracts § 14.04 (3d ed. 2006) ("[W]here economic loss occurs as a fairly traceable consequence of tangible physical injury, property damage coverage is available.").

¶ 38    Universal nevertheless contends that even if the policy covers consequential damages that arise from the destruction of property, the policy does not cover the spoliation claim because Gramacki is not suing for the value of the Nissan Pathfinder, which Gramacki did not own. According to Universal, because the claim against LKQ and Farmers was not for the value of the vehicle itself, the policy does not cover the consequential damages that Gramacki seeks. We disagree.

¶ 39    First, and most importantly, Universal presents no language from the policy before us to support its argument that the claimant against the insured must own the property that is physically injured. The policy does not state that the owner of the vehicle in question must bring suit; all it requires is "loss" to a covered vehicle.

¶ 40     Second, courts in Illinois do not consider whether the party asserting a claim against the insured owned the property at issue when considering whether a policy covers a claim. See, e.g., *Elco Industries, Inc. v. Liberty Mutual Insurance Co.*, 46 Ill. App. 3d 936 (1977) (finding that manufacturer that was attempting to recover the costs it incurred in repairing engines in a recall program, after the supplier's product failed, could recover part of the repair costs, even though the manufacturer did not *own* the products that had been recalled because they had already been sold); see also *Travelers Insurance Co. v. Penda Corp.*, 974 F.2d 823, 830-31 (7th Cir. 1992) (noting that "Illinois cases do not consider who own[s] the property in question when determining if a claim is within policy coverage" and collecting other Illinois cases as examples). Nor do courts require that a suit seeking damages that arise from the destruction of property must also seek the value of the destroyed property. For example, the parties in *Keeley & Sons* who sued the insured for spoliation did not sue for the value of the destroyed property, the I-beam. See *Keeley*, 381 Ill. App. 3d at 1121; see also, e.g., *Penda Corp.*, 974 F.2d at 830-31 (finding that allegations in the complaint triggered a duty to defend, even where the property allegedly damaged did not belong to the party suing the insured).

¶ 41     Finally, the only authority Universal presents is an insurance-liability law treatise that does not actually support Universal's argument. Quoting the Windt treatise, Universal claims that " '[u]nless the insured is being sued because of property damage that is covered by the policy *** coverage cannot exist pursuant to the property damage coverage part for the consequential damages being sought by reason of the property damage.' " As explained in the immediate next sentence, the treatise is simply explaining that a policy will not cover consequential damages when the property allegedly damaged is not covered by the policy (by reason of an exclusion, for instance). See Windt, *supra* § 11.1, at 11-18 ("For example, suppose that the only property damage alleged is to the insured's product, and that such property damage is encompassed by the product exclusion ***. The economic loss arising out of the non-covered property damage, although itself not encompassed by the product exclusion or any other exclusion, should not be covered."). Here, there is no question that the property damage–the physical injury to the Nissan Pathfinder and the resulting loss of use of the vehicle–is "covered by the policy." Thus, the damage to the cause of action sought in the Gramacki claim is "covered [because it] constitutes a consequential damage flowing from covered property damage." *Id.* at 11-18.

¶ 42                                     III. Exclusion O

¶ 43     Universal argues that even if the auto inventory policy part covers the Gramacki claim, Exclusion O applies to bar coverage. Exclusion O provides that the policy does not cover "LOSS *** caused by depreciation or diminished value." "It is the burden of the insurer to affirmatively prove that an exclusion in an insurance policy applies." *United National Insurance Co. v. Faure Brothers Corp.*, 409 Ill. App. 3d 711, 717 (2011) (citing *Pekin Insurance Co. v. Miller*, 367 Ill. App. 3d 263, 267 (2006)). "Provisions in insurance policies that exclude or limit coverage must be construed liberally against the insurer." *Id.* (citing *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 78 (1991)).

¶ 44    Universal contends that " [e]ven assuming *arguendo* that diminution of value of a claim caused by spoliation of evidence is considered to be within the definition of 'loss,' summary judgment as to the duty to defend and to indemnify is still appropriate" in light of Exclusion O. We do not agree. In finding that the policy covers Gramacki's claim, we have not concluded that the diminution of value of a claim is within the definition of "loss." The physical damage to the Nissan Pathfinder and the resulting loss of use constitute "loss" under the policy. The diminution of value of Gramacki's product liability claim is simply the measure of damages of the spoliation claim, not what constitutes "loss." We conclude that Exclusion O does apply to bar coverage of the spoliation claim.

¶ 45                    IV. Choice of Law: Coverage Under Wisconsin Law

¶ 46    For the foregoing reasons, we conclude that under Illinois law the policy covers Gramacki's spoliation claim. Universal argues that Wisconsin law does not provide coverage, however, and we must therefore decide whether a conflict exists between Illinois and Wisconsin law. If Universal is correct, there would be a conflict of laws and we would then apply a choice-of-law analysis to determine which state's law applies to this dispute. We find that because there is no conflict between Illinois and Wisconsin law, the substantive law of Illinois, as the law of the forum, controls the interpretation of the policy.

¶ 47    The policy in question does not contain a choice-of-law provision. In the absence of such a provision, the general choice-of-law rules of the forum state, Illinois, control:

> "Before a court can apply a choice-of-law analysis to determine which state's law applies to the dispute, it must first determine if there is a conflict in the laws of the two states. [Citations.] A conflict exists if the difference in laws will result in a difference in outcome. [Citations.] If the law of the jurisdictions in question is essentially the same on the disputed point, there is no need to apply a choice-of-law analysis. [Citation.] In the absence of a conflict, Illinois law applies as the law of the forum. [Citation.]" *SBC Holdings, Inc. v. Travelers Casualty & Surety Co.*, 374 Ill. App. 3d 1, 13 (2007).

Universal raises two arguments as to why the policy does not cover the spoliation claim under Wisconsin law. Universal first contends that because Wisconsin does not recognize a cause of action for negligent spoliation of evidence–a statement of Wisconsin law that LKQ accepts and we need not address here–Universal "would have no duty to defend under Wisconsin law even if it applied." The claim for negligent spoliation of evidence asserted against LKQ was brought in Illinois and was governed by Illinois law, and the question before us is whether to look to Illinois or Wisconsin law as a guide in determining whether the insurance policy covers those underlying claims. If Wisconsin law were to apply, the court below would apply the Wisconsin courts' relevant principles of contract interpretation to determine if the provisions at issue provided coverage for the claims against LKQ. In short, whether there is a cause of action for spoliation under Wisconsin law tells us nothing about what law to apply in interpreting the insurance policy.

¶ 48    Universal next argues that a court applying Wisconsin law would interpret the provisions at issue to find that the policy does not cover the spoliation claim. At the outset, we note that standards for determining whether there is a duty to defend are similar under Wisconsin and

-14-

Illinois law. See, *e.g.*, *Liebovich v. Minnesota Insurance Co.*, 2008 WI 75, ¶ 16, 751 N.W.2d 764 ("The duty to defend is triggered by the allegations contained within the four corners of the complaint. [Citation.] An insurer has a duty to defend when there are allegations in a complaint that, if proven, would give rise to recovery under the terms and conditions of the insurance policy . . . . The duty of defense depends on the nature of the claim and has nothing to do with the merits of the claim." (Internal quotation marks omitted.)); *Wisconsin Label Corp. v. Northbrook Property & Casualty Insurance Co.*, 2000 WI 26, ¶ 19, 607 N.W.2d 276 (reviewing principles of construction under Wisconsin law); *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 86, ¶ 36, 753 N.W.2d 448 (reciting the "longstanding rule that we must focus on the incident or injury that gives rise to the claim, not the plaintiff's theory of liability" (internal quotation marks omitted)).

¶ 49     Raising nearly identical arguments as it did with respect to Illinois law, Universal argues that the policy does not cover the spoliation claim under Wisconsin law because the diminished value of a cause of action does not constitute "physical loss or damage." Universal then cites a single case, *Qualman v. Bruckmoser*, 471 N.W.2d 282 (Wis. Ct. App. 1991), as support. In *Qualman*, purchasers of a home sued the sellers for breach of contract and misrepresentation of "significant structural defects." *Id.* at 285. The sellers' insurer argued that it had no duty to defend against these claims. While the buyers argued that their claims alleged property damage, the court found that "[a]ny property damage that existed in the home existed before the making of the alleged misrepresentations." *Id.* The court reasoned that although the "defective condition of the house is an element" of the buyers' complaint, "those defects cannot be considered the *cause* of the [buyers'] damages." (Emphasis in original.) *Id.* The court concluded that "[p]roperty damage within the meaning of the policy is not alleged." *Id.*

¶ 50     We find *Qualman* distinguishable from the case before us. We agree with the Wisconsin Supreme Court that in *Qualman* the plaintiffs suing the insured "did not allege any property damage caused by the [insured] defendants." *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 86, ¶ 53, 753 N.W.2d 448 (citing *Qualman*, 471 N.W.2d at 285); see also *Rock v. State Farm Fire & Casualty Co.*, 395 Ill. App. 3d 145, 150 (2009) (explaining that *Qualman* found "no duty of insurance company to defend claim against insureds where underlying claims for breach of contract and misrepresentation arising out of alleged failure to disclose defects in home alleged pecuniary damages, not property damages"). Here, in contrast, the Gramacki complaint contains allegations of physical loss and damage to the Nissan Pathfinder and loss of use resulting from the vehicle's destruction. We therefore conclude that *Qualman* is inapplicable to the present case.

¶ 51     As with its arguments under Illinois law, Universal again ignores the factual allegations in the Gramacki complaint in arguing that the policy does not provide coverage. Under Wisconsin law, like Illinois law, a court must look to the factual allegations of the complaint to determine if there is physical damage or loss of use resulting from physical damage. *1325 North Van Buren, LLC v. T-3 Group, Ltd.*, 2006 WI 94, ¶ 52, 716 N.W.2d 822 ("[A] court first focuses on the incident allegedly giving rise to coverage–not the theory of liability–to determine whether the incident comes within the coverage afforded by the policy."). We see no reason why a court applying Wisconsin law would find that "loss" is not alleged in the

Gramacki complaint. The interpretation of physical damage or loss appears to be the same under Wisconsin and Illinois law. See *General Casualty Co. of Wisconsin v. Rainbow Insulators, Inc.*, 2011 WI App 58, ¶ 14, 2011 WL 1162088 (Wis. App.) (unpublished) ("When 'injury' 'is qualified by the word "physical," its meaning is limited to physical damage.' [Citation.] Accordingly, 'the phrase "physical injury" ordinarily refers to some sort of physical damage' to property *** such as 'an alteration in appearance, shape, color, or in other material dimension.' " (quoting *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 301 (2001))); see also *Wisconsin Label Corp. v. Northbrook Property & Casualty Insurance Co.*, 2000 WI 26, ¶ 31, 607 N.W.2d 276 ("Although the term 'injury,' standing alone, may refer broadly to both physical and non-physical types of damage, when it is qualified by the word 'physical,' its meaning is limited to physical damage."). We have concluded that under Illinois law Gramacki's complaint contains allegations of "physical loss or damage," and we do not find that Wisconsin law provides a contrary interpretation of those policy terms.

¶ 52    Moreover, we find no indication that Wisconsin law requires a different interpretation of "loss of use" than Illinois law. "In Wisconsin, a sufficient claim for 'loss of use' requires that the property be rendered useless." *Everson v. Lorenz*, 2005 WI 51, ¶ 29, 695 N.W.2d 298. In view of the specific allegations in the Gramacki complaint that he was unable to use the Nissan Pathfinder in litigating the products liability claim, we find that the Gramacki complaint has alleged "loss of use" under Wisconsin law.

¶ 53    Finally, we conclude that Wisconsin law follows the consensus view that the policy provisions at issue cover damages for "intangible losses" when those losses are as a result of physical loss or damage to property. The Wisconsin Supreme Court has found that economic losses will be covered when those damages arise from physical injury to property:

"[E]conomic losses will be covered under a CGL policy only when the policy language creates coverage for such losses. In the Policy, coverage applies only when damages are because of 'physical injury to tangible property' or 'loss of use of tangible property.' The economic losses in this case did not result from either of these types of damage." *Wisconsin Label Corp.*, 2000 WI 26, ¶ 57, 607 N.W.2d 276.

¶ 54    We conclude that there is no conflict between Wisconsin and Illinois law as to the interpretation of the provisions in the policy here. We therefore must apply the law of Illinois as the law of the forum. Under Illinois law, the Universal policy covers Gramacki's spoliation claim, and the policy imposes a duty on Universal to defend and indemnify LKQ.

¶ 55                                         V. Damages

¶ 56    The parties agree that because we have determined that the policy required Universal to defend LKQ, Universal is liable for LKQ's costs of defense in the underlying action. See *Those Certain Underwriters at Lloyd's v. Professional Underwriters Agency, Inc.*, 364 Ill. App. 3d 975, 983 (2006) ("An insurer *** has the option of filing a declaratory judgment action and waiting to act until after its policy obligations are determined, at which time the insurer may be liable to reimburse the insured for any costs of defense the insurer should have paid."). LKQ concedes that it cannot recover any fees or costs for defending Universal's

declaratory judgment action, as it has not alleged vexatious conduct by Universal. *Westchester Fire Insurance Co. v. G. Heileman Brewing Co.*, 321 Ill. App. 3d 622, 637 (2001) ("Absent vexatious behavior by the insurer, an insured cannot recover attorney fees incurred in bringing a declaratory judgment action against the insurer to establish coverage. Nor can an insured recover attorney fees and costs for defending a declaratory judgment action brought by an insurer absent vexatiousness.").

¶ 57    Universal may also have to reimburse LKQ for the amounts paid to settle the Gramacki claim, as the policy imposes a duty on Universal to indemnify LKQ for damages resulting from the loss of the Nissan Pathfinder. We agree with Universal, however, that it will only be liable for the amount paid in settlement if the court determines that the settlement agreement was reasonable. "Once the insured has accrued liability in the underlying lawsuit, the duty to indemnify is implicated." *Santa's Best Craft, L.L.C. v. Zurich American Insurance Co.*, 408 Ill. App. 3d 173, 183 (2010). "Where, as here, the insured settles the underlying lawsuit prior to verdict, it must demonstrate that it settled 'an otherwise covered loss in "reasonable anticipation of personal liability" ' to recover the settlement." *Id.* (quoting *Federal Insurance Co. v. Binney & Smith, Inc.*, 393 Ill. App. 3d 277, 282 (2009), quoting *United States Gypsum Co. v. Admiral Insurance Co.*, 268 Ill. App. 3d 598, 625 (1994)). On remand, then, the trial court must determine whether LKQ can demonstrate "potential liability on the facts known to the [insured]" and can show that the settlement amount was " 'reasonable in view of the size of possible recovery and degree of probability of claimant's success against the [insured].' " (Internal quotation marks omitted.) *Federal Insurance Co.*, 393 Ill. App. 3d at 282 (quoting *United States Gypsum Co.*, Ill. App. 3d at 625-26). While "[t]he burden of proving reasonableness falls on the insured," the insurer "retains the right to rebut any preliminary showing of reasonableness with its own affirmative evidence bearing on the reasonableness of the settlement agreement." *Id.* at 283 (citing *Guillen ex rel. Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill. 2d 141, 163 (2003)).

¶ 58                                        CONCLUSION

¶ 59    For the reasons stated above, we reverse the trial court's order granting Universal's motion for summary judgment as to LKQ, reverse the trial court's order denying LKQ's motion for summary judgment, and remand with instructions that the trial court enter summary judgment in favor of LKQ on the issue of Universal's duty to defend and duty to indemnify under the policy.

¶ 60    Reversed and remanded.